STATE of Iowa, Appellant,

v.

Richard J. SCHWARTZ, II, James Russell Brown, Galen Leonard Waage, and John Duane Sutton, Appellees.

No. 90–649.

Supreme Court of Iowa.

March 20, 1991.

---

Thomas J. Miller, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., and Douglas A. Krull, County Atty., for appellant.

Charles H. Levad, Mason City, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

SNELL, Justice.

This consolidated appeal arises out of four unrelated Worth County criminal cases. They are: *State v. Richard J. Schwartz, II; State v. James Russell Brown; State v. Galen Leonard Waage;* and *State v. John Duane Sutton.* The question is whether the district court erred in suppressing defendants' statements on the ground that improper *Miranda* warnings were given. We conclude that it did, and therefore reverse and remand the district court's rulings in all four cases.

*Richard J. Schwartz, II:* Prior to December 15, 1989, Worth County deputy sheriff, David Gentz, was investigating a crime of lascivious acts. Schwartz was the primary suspect regarding that complaint and the investigation had "focused" on him at that time.

On December 15, 1989, deputy Gentz telephoned Schwartz and requested that he come to the sheriff's office to discuss this matter with him. In addition, officer Steve Hepperly of the Manly police department, apparently stopped at the store of defendant's employ and, according to Schwartz, "asked if I wouldn't mind coming to Northwood to answer questions." Officer Hepperly then gave Schwartz a ride to the sheriff's office in a police vehicle. Upon his arrival, deputy Gentz explained to Schwartz why he was there, including the date of the alleged incident, the persons allegedly involved, and the names of the complaining witnesses. Schwartz then admitted that he knew prior to arriving at the sheriff's office the nature of the investigation.

Prior to questioning, deputy Gentz advised Schwartz of his *Miranda* rights by reading to him a document entitled "Specific Warning Regarding Interrogation." The document was then read and signed by Schwartz.

According to the deputy, Schwartz indicated that he understood his rights and was willing to answer questions. He did not request an attorney, nor did he ask that the questioning stop at any time. Schwartz was arrested at the conclusion of

the interview after certain incriminating statements were made.

At the suppression hearing Schwartz admitted that he understood he had the right to remain silent and that anything he said could be used against him in court. In addition, he admitted he knew he could have a lawyer appointed for him before he said anything. Furthermore, in response to questioning by the county attorney, Schwartz indicated that he just "wanted to get it off my chest."

On January 17, 1990, Schwartz was charged with one count of lascivious acts with a child in violation of Iowa Code section 709.8 (1989). On February 8, 1990, Schwartz moved to have his statements suppressed. On March 30, 1990, the trial court granted his motion.

*James Russell Brown:* Sometime prior to November 1, 1989, deputy Gentz received a telephone call from Mercy Hospital regarding a possible child abuse. In response to that call, the deputy discovered Brown was suspected of having physically abused a child.

Deputy Gentz telephoned Brown and requested that he come to the sheriff's office in Northwood to discuss the matter. Brown admitted to knowing the nature of the investigation.

Upon his arrival at the sheriff's office, Brown was informed of the nature of the investigation. Deputy Gentz admitted that the investigation had "focused" on Brown and the child's mother at that time. Prior to questioning, the deputy advised Brown of his *Miranda* rights by reading the aforementioned "Specific Warning Regarding Interrogation." The document was then given to Brown to read and sign, which he did.

Deputy Gentz testified that Brown did not have any questions regarding his rights and did not ask for an attorney. In addition, at no time did Brown ask to stop the questioning or decline to answer any questions. Various incriminating statements were made by Brown during the course of questioning and he was placed under arrest following the interview.

Brown testified that when his rights were read to him from the form, he believed he was under arrest. In addition, he testified that while he understood an attorney would be appointed for him at a later time, he believed that if he wanted an attorney immediately, he would have to hire one himself.

On cross examination, Brown admitted that he knew why he was there and also admitted to knowing a crime was being investigated. He also admitted to knowing that he did not have to say anything or respond to any questions. When asked what he thought he would gain by talking, Brown responded: "I hadn't done anything. I figured it would help me."

On redirect, Brown indicated he believed that if he failed to answer any questions at that time, he would be put in jail and held until an appointed lawyer showed up the next day. Brown said, "I didn't want that."

On December 12, 1989, Brown was charged with one count of child endangerment in violation of Iowa Code sections 726.6(1)(b), (e), and 726.6(3). On February 2, 1990, Brown moved to have his statements suppressed. On March 30, 1990, the trial court granted his motion.

*Galen Leonard Waage:* On September 8, 1989, the Worth County sheriff's office received a report from the postmaster in Manly that a post office box had been tampered with and a money order taken. Later, the sheriff's office was contacted by the Manly State Bank which reported that an altered money order had been cashed. The original payee was apparently whited out and Waage's name typed in. Deputy Gentz and a police officer for the city of Manly went to Waage's farm outside Manly. Deputy Gentz admitted the investigation had "focused" on Waage when they went to his farm and that he was a "prime suspect" in the crime at that time.

At the officers' request, Waage came out of his house and discussed the matter with them in his yard. The deputy identified himself and told Waage he was investigating a forged money order. In addition, the

deputy advised Waage of his *Miranda* rights.

The *Miranda* warnings given Waage at the time were given from memory and, according to the testimony given in court, were substantially the same as those found in the "Specific Warning Regarding Interrogation." The deputy admitted telling Waage that "we have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court."

Waage indicated that he understood his rights and "gave the impression" that he did not want a lawyer. The deputy understood that Waage was not requesting a lawyer, although he apparently did not say so.

Upon further questioning, Waage stated that he had found an envelope containing a check for $300. He also admitted to erasing the name of the payee and inserting his own. In addition, Waage stated he had burned the envelope behind his barn. The entire questioning lasted approximately fifteen to thirty minutes.

Waage was then placed under arrest and transported to Worth County sheriff's office. He was again given his *Miranda* warnings, this time by deputy Gentz reading directly from a copy of the "Specific Warning Regarding Interrogation." The deputy then asked Waage whether he understood his rights and the waiver of his rights, at which time defendant indicated that he did. Waage then signed the waiver and gave the officers another statement. This statement was transcribed and signed by Waage.

Waage later testified in support of his own motion at the hearing. According to his testimony, he was a "poor student" and only completed the eighth grade. He also has a self proclaimed problem with dyslexia, which he described as "stuttering," and can read "very little."

When asked by his attorney to read the top portion of the "Specific Warning Regarding Interrogation," Waage testified that he believed it to say "Special Warrant for Your Arrest."

Waage further testified that he does not have any prior criminal record, has never been arrested before, and has never been in trouble. In response to a question by his attorney, Waage indicated that he had never had a lawyer before. However, on cross-examination, he admitted to knowing what a lawyer was and having talked with two or three previously.

Finally, Waage admitted that the deputy told him he was a suspect regarding a stolen money order and that he had a right to remain silent and a right to have a lawyer. According to Waage, he told the deputy he wanted a lawyer "because I knew I did wrong."

On October 10, 1989, defendant was charged with one count of false use of a financial instrument in violation of Iowa Code sections 715A.2(1)(a), (c) and 715A.2(2)(a). On January 18, 1990, Waage moved to have his statements suppressed. On March 30, 1990, the trial court granted his motion.

*John Duane Sutton:* Deputy Gentz received information that Sutton had been at the location of a burglary which occurred in Worth County. Accordingly, the deputy obtained a search warrant to seize Sutton's shoes in order to compare them with footprints found at the crime scene. On August 16, 1989, the search warrant was served on Sutton at the Cerro Gordo County jail. He was in the Cerro Gordo County jail at that time on a warrant for an unrelated charge. The deputy testified he immediately advised Sutton of his *Miranda* rights by reading from a copy of the "Specific Warning Regarding Interrogation." When Sutton was asked whether he understood his rights and whether he understood the waiver, he responded "yes" to both questions. Sutton then signed the waiver contained on the document.

Sutton was informed that he was the suspect in a burglary and the deputy proceeded to ask him questions regarding the investigation. Sutton admitted to being in one of the buildings at the farmstead, but denied being in any other buildings. According to Sutton, he was searching for his lost coon dog at the time.

Sutton never asked for an attorney and never indicated that he did not want to talk. Eventually, Sutton indicated that he wanted to go back to his cell and the questioning stopped at that time.

On October 3, 1989, Sutton was charged with three counts of second-degree burglary in violation of Iowa Code section 713.5. On January 8, 1990, Sutton moved to have his statements suppressed. On March 30, 1990, the trial court granted his motion.

On April 27, 1990, the State filed applications for discretionary review in all four cases. The State also filed a motion to consolidate the applications. We consolidated the cases and granted review on May 17, 1990.

In all four cases, deputy Gentz interviewed the defendants and gave each of them the following *Miranda* warning which was also read and signed by each defendant:

### SPECIFIC WARNING REGARDING INTERROGATION

Place _____

Date _____

Time _____

**YOUR RIGHTS:**

Before we ask you any questions, you must understand your rights.

You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during the questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER

I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me.

Signed _____

Witness _____

Witness _____

Time _____

In all four cases, the defendants waived their right to counsel and made incriminating statements that were later suppressed by the trial court.

Our scope of review is de novo based on an independent evaluation of the totality of the circumstances on issues involving violation of basic constitutional safeguards.

*State v. Cullison*, 227 N.W.2d 121, 126–27 (Iowa 1975).

Since the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we have had a dual test for determining the admissibility of inculpatory statements by a criminal defendant. *State v. Davis*, 446 N.W.2d 785, 788 (Iowa 1989). "First, we ascertain whether or not *Miranda* warnings are required and if so, whether they were properly given. Second, we determine whether the statement is voluntary and satisfies due process." *Id.*

In *Miranda*, the Court fashioned a prophylactic rule designed to protect a defendant's fifth and fourteenth amendment rights by mandating that during a custodial interrogation, an accused be advised of certain constitutional rights. 384 U.S. at 444–45, 86 S.Ct. at 1621, 16 L.Ed.2d at 706–07. A defendant may, however, waive these rights provided the waiver is made voluntarily, knowingly and intelligently. *Id.*

Significantly, a *Miranda* inquiry is not triggered unless there is both custody and interrogation. *See, e.g., Davis*, 446 N.W.2d at 788; *State v. Brown*, 341 N.W.2d 10, 16 (Iowa 1983); *State v. Cook*, 330 N.W.2d 306, 312 (Iowa 1983); *State v. Kyseth*, 240 N.W.2d 671, 673 (Iowa 1976). In *Davis*, this court reiterated the *Miranda* Court's definition of "custodial interrogation" as adopted in *Kyseth* as the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any way." *Davis*, 446 N.W.2d at 788 (citing *Kyseth*, 240 N.W.2d at 673 (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706)).

The district court found that Schwartz, Brown and Waage were not in custody during the times they made their initial incriminating statements and that the investigating officer was not required to give them *Miranda* warnings. Nevertheless, the court concluded that even though the warnings were not required, when the officer elected to give them he had an obligation to give them correctly. The quoted warning was a misstatement of the law,

the court decided, which required a suppression of the incriminating statements. Although Sutton was in custody, the court suppressed his incriminating statements because the *Miranda* warning given to him was similarly flawed.

▇ Based on the uncontested facts and record before us today, we agree with the findings of the trial court that defendants Schwartz, Brown and Waage were not in custody at the time they were initially questioned by the deputy sheriff. With the exception of Waage, who was initially questioned in his yard, questioning was done at the sheriff's office where defendants appeared voluntarily. The atmosphere during the interviews was not coercive or threatening nor was their freedom restrained in any way. None of the defendants were arrested or placed in custody until the initial interviews were complete and the deputy had probable cause to do so. Further, while each defendant was a suspect in his individual case, this status alone did not trigger the requirement of *Miranda* warnings. *Davis*, 446 N.W.2d at 788 (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977)). "The harm that *Miranda* was to eradicate was the 'incommunicado interrogation ... in a police dominated atmosphere.'" *Davis*, 446 N.W.2d at 788 (quoting *State v. McDonald*, 190 N.W.2d 402, 404 (Iowa 1971)). Therefore, our ultimate inquiry focuses on whether there is an arrest or some other restraint on the accused's freedom of movement of a degree associated with an arrest. *Davis*, 446 N.W.2d at 788 (citing *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 713–14, 50 L.Ed.2d at 719). We conclude that there was no requirement that *Miranda* warnings be given to Schwartz and Brown since no arrest or custody was found in these cases. Regarding Waage, no warning was necessary before incriminating statements were made to the deputy sheriff while questioning him in his yard. Any statements made by Waage after his arrest are admissible for the reasons set forth in our analysis, hereafter, of the same issue as raised by Sutton. For these reasons, we reverse the

district court's rulings on defendants' motions to suppress in the cases of *State v. Schwartz, State v. Brown* and *State v. Waage.*

In the fourth case, *State v. Sutton,* Sutton was already incarcerated in the Cerro Gordo County jail on a warrant for unrelated charges when interviewed by the deputy sheriff on the burglary charges. The district court found, and we assume without deciding, that because Sutton was in custody at the time of questioning, he was entitled to receive *Miranda* warnings. On the question of whether a person incarcerated is "in custody" for *Miranda* purposes, *see Leviston v. Black,* 843 F.2d 302 (8th Cir.), *cert. denied,* 488 U.S. 865, 109 S.Ct. 168, 102 L.Ed.2d 138 (1988). We must only decide whether the warnings given Sutton were in accord with *Miranda.*

The *Miranda* Court "presumed that interrogation in certain custodial circumstances is inherently coercive and ... that statements made under those circumstances are inadmissible unless the suspect is specifically warned of his *Miranda* rights and freely decides to forego those rights." *Duckworth v. Eagan,* 492 U.S. 195, ——, 109 S.Ct. 2875, 2879, 106 L.Ed.2d 166, 176 (1989) (quoting *New York v. Quarles,* 467 U.S. 649, 654, 104 S.Ct. 2626, 2630, 81 L.Ed.2d 550 (1984) (footnote omitted)).

The Supreme Court has never insisted that *Miranda* warnings be given in the exact form described in that decision.

In *Miranda* itself, the Court said that "[t]he warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by a defendant." 384 U.S., at 476 [86 S.Ct., at 1629] (emphasis added). *See also Rhode Island v. Innis,* 446 U.S. 291, 297, 100 S.Ct. 1682, 1687, 64 L.Ed.2d 297 (1980) (referring to "the now familiar *Miranda* warnings ... or their equivalent"). In *California v. Prysock,* 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), we stated that "the 'rigidity' of *Miranda* [does not] exten[d] to the precise formu-

lation of the warning given to a criminal defendant," and that "no talismanic incantation [is] required to satisfy its strictures." *Id.,* at 359, 101 S.Ct., at 2809. *Duckworth,* 492 U.S. at ——, 109 S.Ct. at 2879, 106 L.Ed.2d at 176–77.

The Court also stated that the prophylactic *Miranda* warnings are "not themselves rights protected by the constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." Id. at ——, 109 S.Ct. at 2880, 106 L.Ed.2d at 177 (quoting *Michigan v. Tucker,* 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974)). Therefore, we need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. Our inquiry is simply limited to a determination of whether the warnings reasonably relay to an accused his rights as required by the *Miranda* decision. *Id.*

We believe the warnings given Sutton touched all aspects and requirements of *Miranda.* The deputy informed Sutton of his right to remain silent, that anything he said could be used against him in court, that he had the right to speak to a lawyer for advice before and during questioning, that he had this right to the advice and presence of a lawyer even if he could not afford to hire one, and that he had the right to stop answering questions at any time until he spoke to a lawyer. As previously noted, the document and warning also added that the authorities could not provide Sutton with a lawyer, but that one would be appointed "if and when you go to court." The district court here, as did the court of appeals in *Duckworth,* thought this "if and when you go to court" language suggested that only those accused who can afford an attorney have the right to have one present before answering any questions. It also reasoned that the quoted phrase implied that if the accused does not "go to court," *i.e.,* the government does not file charges, the accused is not entitled to counsel at all.

In our view, the district court misapprehended the effect of the inclusion of the "if and when you go to court" language in these *Miranda* warnings. First, the warn-

ing accurately describes the procedure for the appointment of counsel in Iowa. Pursuant to Iowa law, counsel is appointed at a defendant's initial appearance in court. Iowa R.Crim.P. 2(3). A complaint shall be filed at or before that appearance. Iowa R.Crim.P. 2(1). Furthermore, we believe it to be relatively common for an accused, after receiving *Miranda* warnings, to ask when he will obtain counsel. *Duckworth,* 492 U.S. at ——, 109 S.Ct. at 2880, 106 L.Ed.2d at 177. "The 'if and when you go to court' advice simply anticipates that question." *Id.* Second, as the Court further observed:

> *Miranda* does not require that attorneys be producible on call, but only that the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one.

*Id.* (footnote omitted).

The *Miranda* Court emphasized that it was not suggesting that "each police station must have a 'station house lawyer' present at all times to advise prisoners." 384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. If the interrogating authorities cannot provide appointed counsel, *Miranda* only requires that the authorities not question the accused unless he waives his right to counsel. *Id.* Here, Sutton did just that. Defendants also call to our attention the use of the phrases "stage of the proceedings" and "state of the proceedings" and argue that a significant difference ensues. The right to counsel attaches at any critical stage of the proceedings. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Iowa Code section 815.10(1) (1987) authorizes the court to appoint an attorney to represent an indigent person at any state of the proceedings. Defendants argue that the code section provision embraces a broader concept than the *Gideon* wording and thereby grants representation before "you go to court." As such, defendants claim the *Miranda* warning as given is a further misstatement of the law.

We think the Supreme Court has by clear inference in *Duckworth* rejected this hypertechnical argument. Accordingly, we hold the warnings given Sutton, in their totality, satisfied *Miranda,* and therefore reverse the district court's ruling on his motion to suppress.

Although we find the *Miranda* warnings given to the defendants in these cases to be adequate, we suggest that law enforcement officials advise an accused of his *Miranda* rights using the language of that case.

REVERSED AND REMANDED.