# IN THE COURT OF APPEALS OF IOWA

No. 21-1383
Filed November 17, 2022

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DANIEL RICHARD DEFINBAUGH,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

A defendant appeals his convictions, alleging the district court should have suppressed statements he made to police and also claims insufficient evidence corroborates his admissions. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Daniel Definbaugh appeals his convictions for two counts of sexual abuse in the second degree. He contends there is insufficient evidence to corroborate confessions he made to police at his home and at the police station. He also claims those statements were involuntary because they were made prior to him receiving *Miranda* warnings, were made again following Definbaugh invoking his right to counsel, and in both instances, were made due to a promise of leniency. We find sufficient evidence corroborates Definbaugh's confessions. We also find that the court properly denied Definbaugh's motion to suppress his confessions to police based on alleged promises of leniency. While we find the court should have suppressed Definbaugh's statements at the police station, any error was harmless. We affirm.

## I. Background Facts & Proceedings

Definbaugh met J.J. in 2015 after she and her family moved into the same trailer park where Definbaugh resided with his girlfriend, Darlene. J.J. would assist Definbaugh with rides to the local food pantry. Definbaugh babysat S.J., J.J.'s daughter, between December 2018 and December 2020. S.J. was two years old in 2018. The exact number of times Definbaugh babysat the child is in dispute. It is undisputed that Definbaugh would babysit the child at his trailer. Darlene would sometimes be present, but at other times Definbaugh would be alone with S.J. J.J. eventually stopped allowing Definbaugh to babysit S.J. after she became concerned about how frequently he asked to babysit the young girl.

Definbaugh began a romantic relationship with Alyssa Johnson in the spring of 2020. Johnson, who was married, met Definbaugh at the food pantry. Johnson

would give Definbaugh rides and bought him various items, some of which were gifts. Definbaugh and Johnson communicated frequently, usually over Facebook Messenger.

Sometime in April or May 2020, Definbaugh told Johnson that he had sexually abused S.J. multiple times. Such abuse centered on the times he babysat S.J., particularly around times when he changed her diapers. The abuse included Definbaugh rubbing S.J.'s vagina with his finger and the tip of his penis. Johnson claimed that Definbaugh told her he used a sex-toy on the child's vagina and also made S.J. perform oral sex on him. Johnson testified that Definbaugh was obsessed with S.J. and wanted Johnson to help him gain access to the child. Johnson informed no one at that time about Definbaugh's admissions.

Johnson's husband learned of his wife's relationship with Definbaugh on July 3, 2020, and demanded Definbaugh return some of the property Johnson had given him. Johnson informed Definbaugh of the demands. Definbaugh first resisted. Upon his reticence, Johnson told him that she would "call [the] cops about [S.J.] if you wanna play dirty." Definbaugh sent multiple messages back, generally pleading with Johnson to not bring up his past and offering to return the property.

Johnson then informed J.J. of Definbaugh's admissions the same day. Police were contacted, and Johnson and J.J. spoke with police. The police extracted Johnson's phone data, which included the Facebook Messages with Definbaugh from July 3. The extraction did not obtain any of the purported messages that Definbaugh sent describing the abuse.

Police eventually contacted Definbaugh at his home on August 18. Two officers spoke with Definbaugh in his yard. After initially denying any abuse

occurred, Definbaugh eventually admitted to sexually abusing the child. He was detained and taken to the police station, where he made further incriminating statements.

The State charged Definbaugh with two counts of sexual abuse in the second degree. Definbaugh moved to suppress, arguing his statements at both his house and the police station were obtained after promises of leniency. He also argued that the police questioned him after he invoked his right to counsel at the police station. Following a hearing, the court denied the motion. A bench trial was held on April 26, 2021. The court found Definbaugh guilty as charged on July 30. He was sentenced to two consecutive fifty-year terms in prison. Definbaugh appeals.

## II.    Suppression of Definbaugh's Confessions

Definbaugh alleges the statements he made to police at his home should be suppressed because they were made prior to receiving *Miranda* warnings. He also claims he invoked his right to counsel at the police station, which the police ignored. Thus, he asserts statements made at the police station should also be suppressed. Finally, he claims both instances of questioning included promises of leniency.

### A.    Statements at Definbaugh's Home

Definbaugh claims he was in custody when an officer was talking to him in front of Definbaugh's home and, therefore, the statements he made should be suppressed because he had not yet received any *Miranda* warnings. The merits of Definbaugh's claim are not preserved for our review. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided

by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Here, neither step was met.

Definbaugh never raised this issue at the district court. His motion to suppress identified that police "detained, arrested and questioned the defendant on two separate occasions—one occurring at the Defendant's residence and the second at the Cedar Falls Police Department." This would appear to have raised his claim to the district court. However, the motion continues, "the Defendant's request for an attorney was ignored and said questioning contained 'implied promises of leniency' thereby making the Defendant's statements involuntary and coerced." The motion concluded by claiming that "said questioning"—the questioning after Definbaugh invoked his right to counsel and after the promises of leniency—violated Definbaugh's rights and should be suppressed. Definbaugh never raised to the district court that his rights were violated by utilizing incriminating statements made prior to receiving his *Miranda* warnings. Thus, his claim is unpreserved.

Furthermore, the district court never ruled on a claim involving Definbaugh's *Miranda* rights at his home. The only reference to that issue comes in the "factual background" section, which notes, "Definbaugh voluntarily engaged in answering the questions at that time and there is no indication his involvement was not voluntary or that he was in custody." The court's "discussion" section analyzes Definbaugh's claims involving the invocation of his right to counsel and potential promises of leniency. Definbaugh's claim is unpreserved.

But even if we were to address Definbaugh's claim that he was restrained at his residence in a way that amounts to a custodial interrogation, we reject this

assertion. The record established that officers knocked on Definbaugh's door and asked if he would "mind stepping out and chatting real quick." The manner of the questions were investigative, not threatening. Definbaugh was asked if he knew why the officers were there. Definbaugh launched into details of a property dispute and relationships he had with S.J.'s mother and another individual, a previous conviction for sexual abuse, a prison sentence, the requirement to be on the sexual registry, and his own sexual abuse by his father. While he initially denied sexually abusing S.J., he later admitted to the same. And while Definbaugh argues he was detained, he was not handcuffed or physically restrained. Although an officer walked with him to his residence to retrieve a pair of shoes, Definbaugh walked back outside while the officers visited with Definbaugh's girlfriend.

It is well settled that Iowa courts apply an objective test, that is, a person is in custody, for *Miranda* purposes, when a reasonable person in that position would understand himself to be in custody. *State v. Countryman*, 572 N.W.2d 553, 557 (Iowa 1997). Iowa precedent on custody for purposes of *Miranda* identifies four factors to consider:

> (1) the language used to summon the individual;
> (2) the purpose, place, and manner of interrogation;
> (3) the extent to which the defendant is confronted with evidence of [their] guilt; and
> (4) whether the defendant is free to leave the place of questioning.

*State v. Miranda*, 672 N.W.2d 753, 759 (Iowa 2003) (quoting *Countryman*, 572 N.W.2d at 558). Iowa courts will consider the totality of the circumstances, but "[t]he general rule is that in-home interrogations are not custodial for purposes of *Miranda*." *See id.* at 759–60 (quoting *State v. Evans*, 495 N.W.2d 760, 762

(Iowa 1993)). The same has been held to be true for conversations outside of a residence. *See, e.g.*, *State v. Schwartz*, 467 N.W.2d 240, 245 (Iowa 1991); *State v. Decanini-Hernandez*, No. 19–2120, 2021 WL 610103, at *7 (Iowa Ct. App. Feb. 17, 2021) (citing *Schwartz*, 467 N.W.2d at 245). Considering these factors, we determine that Definbaugh was not in custody at his residence at the time he made statements concerning sexual abuse of the child.

### B.     Statements at the Police Station

Definbaugh argues the district court should have suppressed the statements he made at the police station because they were made after he invoked his right to counsel. We review the denial of a motion to suppress statements made in violation of constitutional guarantees de novo. *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015). "'[W]e make an independent evaluation of the totality of the circumstances as shown by the entire record, considering both the evidence introduced at the suppression hearing as well as the evidence introduced at trial." *Id.* (internal quotation marks and citation omitted).

Once a defendant invokes their right to have counsel present, they cannot be subject "to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with police." *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). However, in order to exercise such right, the invocation "requires, at minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States*, 512 U.S. 452, 548 (1994). The statement must not be "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have

understood only that the suspect *might* be invoking the right to counsel." *Id.* at 459; *accord State v. Harris*, 741 N.W.2d 1, 6 (Iowa 2007) ("Officers have no obligation to stop questioning an individual who makes an ambiguous or equivocal request for an attorney").

The following exchange occurred at the police station:

> Definbaugh: Can I have a lawyer?
> Officer Mercado: What's that?
> D: Can I have a lawyer?
> M: You can, if you would like to.
> D: I don't have one.
> M: Ok.
> D: I just don't want to go to jail anymore.
> M: Ok.
> D: I want to set my path right where I belong.
> M: Right.
> D: And live my life with Darlene and her daughter. . .
> M: Right, I understand.  No one wants to go to jail and I'm not saying that's where you are going right now but I do need to cover a few more questions with you, so are you willing to do that with me today?
> D: Yeah, I'll try the best I can.

The district court found that Definbaugh's initial questions about a lawyer did not invoke his right to an attorney.

> [W]ithout even really listening to or responding to the officer's statement that he 'can' have a lawyer, Definbaugh continued speaking . . . and then immediately returned to a stream of prior conversation with the officer about not wanting to go to jail again and wanting to set his path right.  Definbaugh flowed back into the conversation with the officer without any prompting by the officer and never returned to the topic of an attorney. . . .  The Court finds that Definbaugh made a reference to a lawyer but his statements and actions immediately following establish a waiver of his right to counsel.

We determine that Definbaugh invoked his right to counsel and did not reinitiate questioning.  Contrary to the district court's assessment, Definbaugh unambiguously invoked his right to counsel.  His request for counsel was not

conditional, inquisitory, or otherwise tentative. *Compare Davis*, 512 U.S. at 462 (concluding "*Maybe* I should talk to a lawyer" was insufficient), *Harris*, 741 N.W.2d at 6 (finding the statement "*If* I need a lawyer, tell me now," was not invoking a right to counsel), *and State v. Morgan*, 559 N.W.2d 603, 608 (Iowa 1997) (holding the statement "*I think* I need a attorney," insufficient to invoke the right to counsel), *with Harris*, 741 N.W.2d at 7 (finding "I don't want to talk about it. We're going to do it with a lawyer" was an invocation). Other jurisdictions have held that Definbaugh's exact phrasing was an unequivocal invocation. *See, e.g.*, *United States v. Lee*, 413 F.3d 622, 626 (7th Cir. 2005); *State v. Dumas*, 750 A.3d 420, 425 (R.I. 2000); *Daniel v. State*, 238 So. 3d 1283, 1287 (Fla. Dist. Ct. App. 2018); *People v. Howerton*, 782 N.E.2d 942, 945 (Ill. App. Ct. 2003). His further statements involving getting his life back on track did not "evince[ ] a willingness and a desire for a generalized discussion about the investigation." *See Harris*, 741 N.W.2d at 6. Indeed, they demonstrate the exact opposite—Definbaugh wanted an attorney present so he could, in his mind, avoid jail. Definbaugh was not ignoring Officer Mercado's responses; he was asserting his right to counsel.

Finally, the officer kept Definbaugh talking by informing him that there were remaining questions that the officer "need[ed] to cover with [Definbaugh.]" This suggested that Definbaugh could not leave until he answered the questions. The officer's insistence that Definbaugh answer a few more questions was "reasonably likely to elicit an incriminating response." *See id.* at 7 (citation omitted). As a result, the questioning violated Definbaugh's constitutional rights.

Despite that, we determine this violation does not warrant reversal. "When the alleged error concerns the erroneous admission of evidence in violation of a

defendant's constitutional rights, such error is typically subject to harmless-error analysis." *Tyler*, 867 N.W.2d at 153. Definbaugh's admissions in the interview at his home were substantially the same as those at the police station. He admitted to babysitting S.J. two or three times, including at least one instance in which he changed her diaper. He admitted to telling Johnson that he molested S.J., including touching her vagina with his finger and penis. He admitted this happened at least twice. There were some details that only came out during the police station interview, such as Definbaugh's assertion that S.J. never performed oral sex on him, but the admissions at his residence alone provide the evidentiary basis for the convictions of two counts of sexual abuse. Subsequent admissions at the police station were cumulative, making the error harmless. *See State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008).

### C.     Promises of Leniency

Definbaugh alleges his statements to the police should be suppressed because they were made after improper promises of leniency. In particular, after Definbaugh told Officer Mercado that "I just don't want to be in trouble," the officer responded, "I understand that. But you know what, honesty gets you a long ways and you're starting with it. We just need to keep going down that path of honesty."[1] Definbaugh claims the officer's statement that honesty "gets you a long ways" was an improper promise of an advantage for confessing.

Claims involving promises of leniency are reviewed under the common law evidentiary test for correction of errors at law. *State v. Hillery*, 956

---

[1] He also alleges there were instances of promises of leniency at the police station. We conclude the statements he cites were not promises of leniency.

N.W.2d 492, 498 (Iowa 2021). "[A] 'confession can never be received in evidence where the prisoner has been influenced by any threat or promise.'" *Id.* at 499 (citation omitted).

> An officer can tell a suspect that it is better to tell the truth without crossing the line between admissible and inadmissible statements from the defendant. *State v. Hodges*, 326 N.W.2d 345, 349 (Iowa 2005). However, the line is crossed "if the officer also tells the suspect what advantage is to be gained or is likely from making a confession." *Id.*

*State v. McCoy*, 692 N.W.2d 6, 28 (Iowa 2005).

Here, the officer's statements were limited to encouraging Definbaugh to be honest. He never told Definbaugh, either expressly or implied, what, if any, advantage would be gained from being honest. While the officer did say that honesty would "go a long ways," we find such statements similar to others that have been held to be proper. *See State v. Whitsel*, 339 N.W.2d 149, 153 (Iowa 1983) (finding that an offer to recommend psychiatric help to the county attorney was not improper); *State v. Bunker*, 13-0600, 2014 WL 957432, at *1–2 (Iowa Ct. App. Mar. 12, 2014) (holding detective's statement, "I can only help you if you're honest with yourself" did not amount to promissory leniency); *State v. Foy*, No. 10-1549, 2011 WL 2695308, at *2–3 (Iowa Ct. App. July 13, 2011) (concluding investigator's statements "[w]e're not going to be any bit of any help to you," if the defendant "did not tell the truth" and "[w]e're just here simply for your benefit" did not amount to promises of leniency). Definbaugh's statements were not made after a promise of leniency.

## III.    Sufficiency of Corroborative Evidence

Definbaugh claims there was insufficient evidence to convict him because his confessions to both the police and Johnson lacked corroborating evidence.  We review sufficiency of the evidence claims for correction of errors at law.  *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).  The court will "consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'"  *Id.* (citation omitted).  We will uphold the verdict if substantial evidence supports it—that is, if there is enough evidence to "convince a rational jury that the defendant is guilty beyond a reasonable doubt."  *Id.*

"The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the defendant committed the offense."  Iowa R. Crim P. 2.21(4).  Evidence corroborates confessions when it tends to "confirm[ ] some material fact connecting the defendant to the crime."  *State v. Meyer*, 799 N.W.2d 132, 139 (Iowa 2011).  "Corroboration need not be strong nor need it go to the whole case so long as it confirms some material fact connecting the defendant with the crime."  *State v. Polly*, 657 N.W.2d 462, 467 (Iowa 2003) (quoting *State v. Liggins*, 524 N.W.2d 181, 187 (Iowa 1994)); *accord Meyer*, 799 N.W.2d at 139 ("It is sufficient as long as it supports the content of the confession and if, together with the confession, proves the elements of the charge against the defendant beyond a reasonable doubt").

> The State must offer evidence to show the crime has been committed and which as a whole proves Polly is guilty beyond a reasonable doubt.  However, the "other proof" itself does not have to prove the

offense beyond a reasonable doubt or even by a preponderance. Other independent evidence "merely fortifies the truth of the confession, without independently establishing the crime charged."

*Polly*, 657 N.W.2d at 467 (internal citations omitted). Admissions, which "amount to an acknowledgement of the guilt of the offense charged" but fall short of confessions, must similarly be corroborated. *Meyers*, 799 N.W.2d at 139.

Sufficient evidence corroborates Definbaugh's statements. First, J.J.'s testimony corroborated Definbaugh's statements about the time frame and frequency of Definbaugh's babysitting. Her testimony further corroborates the statements Definbaugh made to Johnson, particularly his obsession with S.J. According to J.J., she stopped allowing Definbaugh to babysit because he was constantly asking to see S.J. Similarly, Johnson testified that Definbaugh was fixated on S.J.

Definbaugh's messages to Johnson further corroborate his admissions. After Johnson threatened to "call cops about [S.J.]," Definbaugh responded "please don't," then immediately offered to give the property back. Three minutes later, he messaged her again, "don't say nothing please I'm crying." The next minute he messaged her again, "don't say nothing please." A couple of minutes later, "please don't say nothing about past." About fifteen minutes later, he messaged her yet again, "please don't bring my past up at all please." When he resisted returning some property, Johnson told him, "[c]ops will be called and I'll tell [S.J.'s father] what u did." Definbaugh promptly responded, "it's headed back," "nothing about past." Definbaugh's statements, as the district court aptly noted, were "immediate, emotional and pleading." He never questioned what Johnson meant when she threatened to call the police about S.J. His pleading indicates his

own knowledge of wrongdoing. Definbaugh's messages corroborate his inappropriate contact with S.J.

We recognize, as Definbaugh points out, that there was no physical evidence in this case. Nor was there any testimony by S.J. However, the nurse practitioner who examined S.J. testified that both of those omissions are expected in a case such as this one, where the victim was only two years old at the time of the offense and there was delayed reporting. Furthermore, our review on appeal is limited, and we view the evidence in the light most favorable to the State. *See Sanford*, 814 N.W.2d at 615. J.J.'s testimony and Definbaugh's messages to Johnson "fortif[y] the truth of [Definbaugh's] confession[s]." *See Polly*, 657 N.W.2d at 467.

**AFFIRMED.**