STATE of Iowa, Appellant,

v.

George H. DAVIS, Appellee.

No. 88–1252.

Supreme Court of Iowa.

Oct. 18, 1989.

Thomas J. Miller, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., Brent D. Heeren, County Atty., and Richard R. Vander Mey, Asst. County Atty., for appellant.

John S. Livingston, Gladbrook, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN and SNELL, JJ.

SCHULTZ, Justice.

In this criminal action, we granted the State's application for discretionary review of the trial court's pretrial ruling suppressing defendant's oral confession and the fruits of a warrant search resulting from those statements. The State concedes that it has the burden to show the statements were voluntarily made. It disputes the trial court's ruling that it must also show that

the statements were knowingly and intelligently made. As we agree with the State's position, we reverse and remand.

Defendant challenges the confession and the evidence seized on constitutional grounds. Since the issue involves a constitutional right, we review the record de novo. *State v. Aldape*, 307 N.W.2d 32, 36 (Iowa 1981).

On February 2, 1988, defendant George Davis told a deputy sheriff at the Tama County Courthouse that the gun used by his brother-in-law, who was under arrest for terrorism, was his and that he wanted it back. The deputy subsequently learned that Davis was a convicted felon whose right to have firearms had not been restored. He then asked another deputy sheriff to first read Davis his *Miranda* rights and then to interview him regarding the gun and to tape-record their conversation. The approximately twenty-minute interview occurred at Davis' home. Davis signed a written *Miranda* waiver form. During the course of this interview, Davis told the deputy sheriff that he owned the 12 gauge shotgun used in his brother-in-law's case and that he had additional firearms in his possession as well. Davis then volunteered to show the deputy a 410 gauge shotgun.

This information was used to obtain a search warrant, and the firearms were subsequently seized. Davis was then charged with two counts of possession of firearms by a felon.

Defendant moved to suppress the tape-recorded conversation and all the items of physical evidence seized as a result of that conversation. The trial court adopted a two-step test of admissibility of defendant's statements by requiring that they must not only be voluntary but knowingly and intelligently made. The court cited Davis' poor education, the technical nature of the crime with which he was eventually charged, and the fact that he was not told that he was suspected of criminal activity as support for its conclusion that the State had not established that the statements were knowingly and intelligently made. It is the State's position that the statements need only be voluntary. It urges that an analysis of "knowledge" and "intelligence" is only required in determining the validity of a waiver of *Miranda* rights. With these contentions in mind, we examine principles concerning the admissibility of inculpatory statements by a criminal defendant.

I. *Admissibility of Inculpatory Statements.* For over a century this court has recognized that the admissibility of inculpatory statements by an accused is dependent upon the State showing that the statements were voluntarily made. *State v. Chambers*, 39 Iowa 179, 182 (1874); *State v. Fidment*, 35 Iowa 541, 542 (1872). In order for a statement to be considered free and voluntary, "it must not be extracted by any sort of threats, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Chambers*, 39 Iowa at 182. We were concerned about the credibility and accuracy of the statements. *See, e.g., State v. Mullin*, 249 Iowa 10, 16–17, 85 N.W.2d 598, 601–02 (Iowa 1957); *State v. Thomas*, 193 Iowa 1004, 1016, 188 N.W. 689, 694 (1929).

More recently, constitutional concerns entered into our decisions involving voluntariness. The U.S. Supreme Court held that a confession obtained by police through the use of threats is violative of due process. *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922, 926 (1963). Thus, if an accused's statements have been obtained by methods offensive to due process, where the suspect clearly had no opportunity to exercise a free and unconstrained will, the statements are inadmissible. *Haynes v. Washington*, 373 U.S. 503, 514–15, 83 S.Ct. 1336, 1343–44, 10 L.Ed.2d 513, 521 (1963); *accord State v. Cooper*, 217 N.W.2d 589, 597 (Iowa 1974).

The Supreme Court placed new burdens upon the State in seeking the admission of inculpatory statements in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* requires the suppression of many statements that would have been admissible under traditional due process analysis by presuming that state-

ments made while in custody and without adequate warnings were coerced and as such violated the fifth amendment to the United States Constitution. *Oregon v. Elstad,* 470 U.S. 298, 304, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222, 229 (1985). While obviously voluntary statements taken in violation of *Miranda* must be excluded from the prosecution's case-in-chief, the presumption of coercion does not prohibit their use for impeachment purposes on cross examination. *Harris v. New York,* 401 U.S. 222, 224–25, 91 S.Ct. 643, 645, 28 L.Ed.2d 1, 4 (1971); *State v. Hatter,* 414 N.W.2d 333, 338 (Iowa 1987). On the other hand, *any* use in a criminal trial of an involuntary statement is a denial of due process requiring automatic reversal. *Mincey v. Arizona,* 437 U.S. 385, 397–98, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290, 303 (1978); *State v. Hrbek,* 336 N.W.2d 431, 435 (Iowa 1983); *State v. Ware,* 205 N.W.2d 700, 704 (Iowa 1973).

■ The teaching of these cases indicates that since *Miranda,* we have a dual test in determining the admissibility of inculpatory statements by a criminal defendant. First, we ascertain whether or not *Miranda* warnings are required and if so, whether they were properly given. Second, we determine whether the statement is voluntary and satisfies due process.

II. *Miranda Warnings.* In *Miranda* the Supreme Court mandated that during custodial interrogation, an accused be advised of certain constitutional rights. 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07. A defendant may waive these rights, however, provided that the waiver is made voluntarily, knowingly and intelligently. *Id.*

A *Miranda* inquiry is not triggered, however, unless there is both custody and interrogation. *Id.; see, e.g., State v. Brown,* 341 N.W.2d 10, 16 (Iowa 1983); *State v. Cook,* 330 N.W.2d 306, 312 (Iowa 1983); *State v. Kyseth,* 240 N.W.2d 671, 673 (Iowa 1976). In *Kyseth* we adopted the *Miranda* Court's definition of custodial interrogation as the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of

his freedom in any way." 240 N.W.2d at 673 (quoting *Miranda* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706).

■ On the record before us, we find that Davis was not in custody while he was interrogated by the deputy sheriff. The atmosphere during the defendant's interview was not coercive or threatening nor was his freedom restrained. In fact, the trial court found that the atmosphere was "most pleasant." He was not deprived of his freedom in any way. He was not placed under arrest and was interviewed in his home. While he was a suspect, this status does not trigger the requirement of *Miranda* warnings. *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977). The harm that *Miranda* was to eradicate was the "incommunicado interrogation ... in a police dominated atmosphere." *State v. McDonald,* 190 N.W.2d 402, 404 (Iowa 1971). The ultimate inquiry is whether there is an arrest or a restraint on freedom of movement of a degree associated with an arrest. *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 713–14, 50 L.Ed.2d at 719. In both *McDonald* and *Cook,* the defendant was interviewed at home, and no custody was found. *McDonald,* 190 N.W.2d at 404; *Cook,* 330 N.W.2d at 312. Therefore, we conclude there was no requirement that the *Miranda* warnings be given. Because *Miranda* is not implicated, it is not necessary for us to analyze whether the defendant's waiver of those rights was made voluntarily, knowingly and intelligently.

III. *Voluntariness.* Our second inquiry addresses the issue of voluntariness. In prior cases we have noted the difference between voluntary waivers of *Miranda* rights and voluntary statements. *State v. Hodges,* 326 N.W.2d 345, 347 (Iowa 1982); *State v. Snethen,* 245 N.W.2d 308, 311 (Iowa 1976); *State v. Hilpipre,* 242 N.W.2d 306, 309 (Iowa 1976). We have noted that they are separate issues. *Snethen,* 245 N.W.2d at 311.

Even if there had been the need to effectively waive defendant's *Miranda* rights, the State must still prove that the accused's subsequent incriminatory statements were voluntarily given. *Hilpipre,*

242 N.W.2d at 309. We cited *Schneckloth v. Bustamonte*, 412 U.S. 218, 223–26, 93 S.Ct. 2041, 2045–47, 36 L.Ed.2d 854, 860–62 (1973), for the proposition that the inculpatory statements must be the product of a "rational and free will" in order to be admitted into evidence. *Id.*

■ The district court held, however, that in order for a statement to be admissible, it must not only be voluntary, but knowingly and intelligently made. The defendant cites *State v. Jacoby*, 260 N.W.2d 828, 832 (Iowa 1977) and *State v. Winfrey*, 221 N.W.2d 269, 273 (Iowa 1974), as support for the district court's conclusion. A close analysis of the relevant cases demonstrates that while our court used the words cited by the district court, we clearly only analyzed whether the admissions were voluntary and not whether they were knowingly and intelligently made. *See, e.g., State v. Davidson*, 340 N.W.2d 770, 771–72 (Iowa 1983); *Fryer v. State*, 325 N.W.2d 400, 409 (Iowa 1982); *State v. Holderness*, 301 N.W.2d 733, 739 (Iowa 1981); *Jacoby*, 260 N.W.2d at 832–33; *Winfrey*, 221 N.W.2d at 273. In *Schneckloth* the Court stated that the notion of voluntariness cannot be taken literally to mean a "knowing" choice. 412 U.S. at 224, 93 S.Ct. at 2046, 36 L.Ed.2d at 861.

With the sole exception of *Jacoby*, which concerned a challenge to the constitutionality of an admission based upon the defendant's emotional distress at the time, the other cases involved a claim by the defendant that he lacked the intelligence to knowingly and voluntarily confess. These are situations where the question of whether an admission was made knowingly becomes an integral part of the issue of voluntariness and becomes subsumed by it. We stated in *Holderness:*

> Mental subnormality does not itself deprive the confession of voluntariness or bar its admission in evidence, so long as the subnormality does not deprive the person in question of the capacity to understand the meaning and effect of the confession.

*Id.* at 739.

■ In its ruling the trial court relied heavily upon its determination that defendant reasonably believed that he was not under criminal investigation. Even if true, his ignorance or misconception as to his circumstances do not mar the voluntariness of his statements. The Supreme Court has stated that it has never "embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." *Elstad*, 470 U.S. at 316, 105 S.Ct. at 1296, 84 L.Ed.2d at 237.

The State contends that there is no evidence in the record to support a claim that defendant's statements to the deputy sheriff were not voluntary. We examine the totality of the circumstances to determine whether the statements were the product of a free and unconstrained choice. *Snethen*, 245 N.W.2d at 311. An incriminating statement is not involuntary in the constitutional sense unless it can be established that it was extorted from the defendant by means of coercive activity. *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987).

No one factor is determinative of the voluntariness of an admission. *Hodges*, 326 N.W.2d at 348. Many factors bear on the issue of voluntariness. These include the defendant's age, experience, prior record, level of education and intelligence; the length of time the defendant is interrogated; whether physical punishment was used; defendant's ability to understand the questions; defendant's physical and emotional condition; whether any deceit or improper promises were used in gaining the admission; and any mental weaknesses the defendant may possess. *Id.* (citations omitted). In the event the questioning was custodial, defendant's knowledge and waiver of his *Miranda* rights and the length of his detention would also be considered. *Id.*

The State contends that there is absolutely no evidence in the record of any dishonesty, deception or trickery on the part of the law enforcement officer in conducting the interview with the defendant. The defendant, on the other hand, asserts that the deputy sheriff's lack of candor in responding to the defendant's question

about the reason for the *Miranda* warning is evidence of deception. While the deputy sheriff may have had a dual motive in questioning the defendant, no charges had been filed against Davis for any kind of criminal conduct at that time. In addition, the deputy did not make the defendant any promises as to what would happen if he did or did not talk to him. He did not tell Davis whether or not he would file charges depending upon if he talked to him. When the defendant asked the deputy if he was under arrest, the deputy truthfully replied that he was not. This is to be distinguished from the situation in *Cooper*, 217 N.W.2d 589, where the police interrogator lied to the defendant about the condition of the victim. In that case we stated that deception of any nature by state agents cannot be condoned. *Id.* at 597.

In *State v. Boren*, 224 N.W.2d 14, 16 (Iowa), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975), we found that a detective's "trick question" did not constitute coercion so as to deprive the defendant of his constitutional rights. In that case the detective had suggested to the defendant that the victim had passed a lie detector test when she had not even taken one. The court found that "[i]t was a means of challenging defendant's veracity rather than a device calculated to overbear his will or impair his capacity for self-determination." *Id.*

The defendant asserts that he could have been improperly influenced to answer the questions of the deputy by the belief that he could have gotten his shotgun returned to him. However, there is nothing in the record to suggest that the deputy did anything to encourage this belief. In fact, when the defendant told the other deputy sheriff in the Tama County Courthouse that he wanted his 12 gauge shotgun back, he was told that it would have to be held for evidence. Defendant volunteered to show the deputy who interviewed him his 410 gauge shotgun. Absent coercion, spontaneous statements volunteered by a defendant are admissible even when *Miranda* warnings are required but not given. *State v. Youngbear*, 229 N.W.2d 728,

736 (Iowa), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 455, 46 L.Ed.2d 390 (1975).

■ At most, the deputy sheriff's remarks were ambiguous and noncommittal. He did not affirmatively mislead Davis as to the possible consequences of his admissions. In *Agee v. White*, 809 F.2d 1487, 1494–95 (11th Cir.1987), such official conduct was not sufficient to violate defendant's constitutional rights. The defendant's allegation that the deputy sheriff failed to inform him of the charges being investigated prior to questioning him does not relate to any of the "traditional indicia of coercion" prohibited by the fifth amendment. *See, e.g., Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954, 965–66 (1987). We find that the deputy sheriff practiced no substantial deceit in his dealings with the defendant.

■ An examination of the other factors which bear on the issue of voluntariness demonstrate that the defendant made his statements to the deputy sheriff without coercion. While the defendant may not be able to read or write well, there is no indication in the record that he had any trouble understanding any of the questions that the deputy sheriff asked. His statements were not reduced to writing at that time. There is no evidence in the record that the defendant was mentally subnormal. While the defendant may well have been tired after working until after 11 p.m., he was only interviewed for approximately twenty minutes in his own home. No physical punishment was used. The deputy did not make use of any known mental weaknesses that the defendant may have possessed. Therefore, in reviewing the totality of the circumstances, we find that the statements made by the defendant to the deputy sheriff were voluntary.

In conclusion, we find that defendant's statements to the deputy sheriff were made voluntarily and free from coercion. They can be used to establish probable cause to obtain a search warrant. Iowa R.Crim.P. 11.1(d). The statements and all the physical evidence seized as a result of that search are therefore admissible at trial. Iowa R.Crim.P. 11.1(e).

IV. *Disposition.* In summary, we hold that defendant George H. Davis' oral statements on February 2, 1988 are admissible in evidence. We further hold that such statements establish probable cause to obtain a search warrant. We reverse the trial court's holding to the contrary.

REVERSED AND REMANDED.