STATE of Iowa, Appellee,

v.

David John FOELL, Appellant.

No. 92–962.

Court of Appeals of Iowa.

Dec. 29, 1993.

Kermit L. Dunahoo of the Dunahoo Law Firm, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Julie Halligan Brown, Asst. Atty. Gen., James Drew, County Atty., and Douglas Hammerand, Asst. County Atty., for appellee.

Heard by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

The defendant, David John Foell, appeals his conviction, following a jury trial, of first-degree murder. Foell argues: 1) the district court erred in overruling his motion to suppress incriminating statements he made at the police station; and 2) he was denied effective assistance of counsel.

Marian Atkinson, a sixty-nine-year-old widow, was found stabbed to death sixteen times in her home in Sheffield on December 9, 1991. That same day, Atkinson's grandson, Chris Oltman, was arrested for the murder. During an interview with the Department of Criminal Investigation (DCI), Oltman implicated the defendant, David Foell, as the actual killer.

Later that same evening, Foell went to the local police station and ultimately confessed to the stabbing. Foell filed a motion to suppress statements he made during that interview. Following an evidentiary hearing, the district court overruled the motion.

Prior to jury selection, Foell's trial counsel withdrew his compulsion defense which had been filed in April 1992. Foell was not present during this proceeding, and the record is not clear whether Foell was consulted by trial counsel on this matter. Trial counsel defended Foell on the basis of an intoxication defense. The State relied on Foell's confession and the testimony of Oltman's girlfriend, who was granted immunity.

Foell testified he had committed the murder, but claimed he was drunk at the time. No other witness testified Foell appeared intoxicated on the night of the murder. Foell also stated he felt coerced by Oltman into committing the crime. The DCI agent who interrogated Oltman was called as a defense witness. Oltman was also called as a defense witness but invoked his Fifth Amendment privilege against self-incrimination.

The jury found Foell guilty of first-degree murder, and the district court sentenced Foell to a mandatory life term of imprisonment. Foell appeals. We affirm.

## I. *Motion to Suppress Confession.*

Foell contends the district court erred in overruling his motion to suppress incriminating statements he made to the police. Foell argues the police coerced him into confessing and therefore his statements should have been suppressed.

■ When a defendant is alleging error involving a constitutional right, such as here, we make an independent evaluation of the totality of the relevant circumstances to determine if such an error was made. *Rinehart v. State,* 234 N.W.2d 649, 658 (Iowa 1975); *State v. Jeffries,* 417 N.W.2d 237, 239 (Iowa App.1987).

The fifth and fourteenth amendments protect a person's right against self-incrimination. *Malloy v. Hogan,* 378 U.S. 1, 3, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653, 658 (1964). Since *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we have a dual test in determining the admissibility of inculpatory statements by a criminal defendant. *State v. Davis,* 446 N.W.2d 785, 788 (Iowa 1989). "First, we ascertain whether or not *Miranda* warnings are required and, if so, whether they were properly given. Second, we determine whether the statement is voluntary and satisfies due process." *Id.*

### A. *Miranda Warnings.*

■ In *Miranda* the Supreme Court mandated that during custodial interrogation, an accused be advised of certain constitutional rights. *Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07. A defendant may waive these rights, however, provided that the waiver is made voluntarily, knowingly and intelligently. *Id.*

■ A *Miranda* inquiry is not triggered unless there is both custody and interrogation. *Id.; Davis,* 446 N.W.2d at 788. Custodial interrogation has been defined as the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any way." *Davis,* 446 N.W.2d at 788 (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706).

■ Based on the record before us, we agree with the findings of the trial court that Foell was not in custody at the time he was initially questioned by the investigators. Foell voluntarily came to the police station to tell his version of what happened the night of the murder. Two investigators interviewed him in one investigator's office. The office door was closed only after several interruptions at the beginning of the interview. The atmosphere during the interview was not coercive or threatening nor was Foell's free-

dom restrained in any way. While Foell was already a suspect in the murder, this status alone did not trigger the requirement of *Miranda* warnings. *State v. Schwartz,* 467 N.W.2d 240, 245 (Iowa 1991). Foell was not placed under arrest until the initial interview was complete.

We conclude there was no requirement the *Miranda* warnings be given since no arrest or custody occurred. *See generally id.*

However, even assuming arguendo Foell was in custody, we find Foell was properly given his *Miranda* warnings. At the beginning of the interview Foell denied any part of the murder. The investigators then stepped out into the hallway for a brief private conversation. When they went back into the room, one of the investigators read to Foell a written statement of his *Miranda* rights and had Foell read the form and sign the acknowledgment and waiver of rights portion of the form. ·The officers then told Foell they did not believe his story. One of the officers then touched Foell on his shoulder and told him all the officers wanted was for him to tell the truth. Shortly thereafter Foell stated he had killed Ms. Atkinson and proceeded to give both an oral and written statement. Foell had been in the investigator's office approximately thirty minutes before making the admission.

We find Foell voluntarily, knowingly and intelligently waived his *Miranda* rights.

### B. *Voluntariness.*

Our second inquiry addresses the issue of voluntariness. *See Davis,* 446 N.W.2d at 788 (noting difference between voluntary waivers of *Miranda* rights and voluntary statements).

Even though we found Foell waived his *Miranda* rights, the State must still prove by a preponderance of the evidence the accused's subsequent incriminatory statements were voluntarily given. *Id.; see also State v. Davidson,* 340 N.W.2d 770, 771 (Iowa 1983).

Statements are deemed voluntary if they were "the product of an essentially free and unconstrained choice, made by the defendant at a time when his will was not overborne nor his capacity for self-determi-

nation critically impaired." *State v. Snethen,* 245 N.W.2d 308, 315 (Iowa 1976). In ruling on the voluntariness inquiry, this court examines the totality of the circumstances. *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975).

Many factors bear on the issue of voluntariness including the defendant's age, experience, prior record, level of education and intelligence; the length of time the defendant is interrogated; whether physical punishment was used; defendant's ability to understand the questions; defendant's physical and emotional condition; whether any deceit or improper promises were used in gaining the admission; and any mental weaknesses the defendant may possess. *Davis,* 446 N.W.2d at 789.

At the time of the confession, Foell was twenty-three years old. He had a high school education. He had prior experience with the criminal justice system. He came to the police station voluntarily. He appeared to understand what was occurring. There was no signs of intoxication. He was read his *Miranda* rights, which he waived. Foell exhibited no signs of fatigue. He confessed approximately thirty minutes into the interview. The entire interview process, from beginning to end lasted approximately three hours.

Foell admits the officers did not use physical force or direct threats to coerce him into a confession. However, Foell claims Officer Ramaeker's conduct was coercive because he placed his hand on Foell's shoulder and asked Foell to tell the truth. Foell claims *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), supports his position. In *Fulminante,* the United States Supreme Court held the defendant's confession was involuntary when a fellow inmate, who was a paid informant, offered to protect the defendant from other inmates who were threatening him if the defendant confessed. *Id.* at 285–89, 111 S.Ct. at 1252–53, 113 L.Ed.2d at 316. The Supreme Court stated, "Our cases have made clear that a finding of coercion need not depend upon actual violence by a government agent; a credible threat is sufficient." *Id.*

In the instant case, we find Officer Ramaeker's conduct, in placing his hand on Foell's shoulder was not a threat of physical violence unless Foell confessed. We therefore find *Fulminante* distinguishable.

■ We also find Officer Ramaeker's request that Foell tell the truth was not coercive. An officer can tell a suspect it is better to tell the truth. *State v. Nolan,* 390 N.W.2d 137, 142 (Iowa App.1986). "The line between admissibility and exclusion seems to be crossed, however, if the officer also tells the suspect what advantage is to be gained or is likely from making a confession. Ordinarily the officer's statements then become promises or assurances, rendering the suspect's statements involuntary." *Id.* at 142–43 (quoting *State v. Hodges,* 326 N.W.2d 345, 349 (Iowa 1982)).

Under the totality of the circumstances, we find Foell's statements to the officers were made voluntarily and free from coercion. We affirm the district court's ruling denying defendant's motion to suppress.

## II. *Ineffective Assistance of Counsel.*

■ Appellant also claims he was denied effective representation of counsel. Established principles govern our review of appellant's Sixth Amendment claim his counsel was ineffective. When considering this claim, our ultimate concern is with "the fundamental fairness of the proceeding whose result is being challenged." *Strickland v. Washington,* 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984). In deciding this we must consider whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. "In examining counsel's conduct we review de novo the totality of relevant circumstances." *State v. Risdal,* 404 N.W.2d 130, 131 (Iowa 1987) (citations omitted). "Defendant bears the burden of proving by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted." *Id.* at 131–32.

■ In proving the first prong of this test, appellant must overcome the strong presumption counsel's actions were reasonable under the circumstances and fell within the normal range of professional competency. *State v. Hildebrant,* 405 N.W.2d 839, 841 (Iowa 1987). To prove the second prong of this test appellant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698 (1984). With these principles in mind we now turn to appellant's specific claims.

■ Foell asserts his trial counsel was ineffective in failing to aggressively argue his motion to suppress. On appeal, Foell claims his confession occurred under dramatically different circumstances than those testified to by himself and the police officers at the suppression hearing. We note these other circumstances were not made part of the trial record at all. We also find they directly conflict with parts of Foell's testimony at the suppression hearing. From our review of the suppression hearing, we find Foell's trial counsel performed in the normal range of professional competency.

■ Foell next claims his trial counsel was ineffective in withdrawing his compulsion defense. Iowa Code section 704.10 (1991) provides:

No act, *other than an act by which one intentionally or recklessly causes physical injury to another,* is a public offense if the person so acting is compelled to do so by another's threat or menace of serious injury, provided that the person reasonably believes that such injury is imminent and can be averted only by the person doing such act.

*Id.* (emphasis added).

Since Foell admitted he intentionally caused the physical injury to the victim, we find trial counsel did not breach an essential duty in waiving a compulsion defense. *See State v. LeCompte,* 327 N.W.2d 221, 223 (Iowa 1982); Iowa Crim.Jury Instr. 200.35.

814

Finally, Foell contends his trial counsel was ineffective by calling as defense witnesses Oltman and the DCI agent who interrogated Oltman. Foell also claims his trial counsel should have called witnesses from South Dakota who would have testified that he suffered from fetal alcohol syndrome.

An attorney's decision regarding strategy or tactics does not ordinarily provide an adequate basis for a claim of ineffective assistance of counsel. *State v. Wilkens,* 346 N.W.2d 16, 19 (Iowa 1984). When trial counsel acts reasonably in selecting and following through on the chosen strategy, the claim of ineffectiveness is without merit. *Id.* at 19. We conclude the defendant's trial counsel was within the normal range of professional competency in deciding upon strategy and in presenting evidence consistent with that strategy.

Further, we do not believe Foell has shown he was prejudiced from his trial counsel's alleged breach of duty. The evidence of Foell's guilt was overwhelming. The State introduced into evidence Foell's confession and the testimony of Oltman's girlfriend, who was granted immunity. Foell himself testified he intended to kill the victim when he entered her house. He also stated he was fully aware he was killing the victim when he repeatedly stabbed her.

We are unable to say, but for the alleged errors committed by his trial counsel, the jury would not have convicted Foell of first-degree murder.

**AFFIRMED.**