STATE of Iowa, Appellee,

v.

Jason Allen MORTLEY, Appellant.

No. 94–811.

Court of Appeals of Iowa.

March 30, 1995.

Paul E. Pfeffer of Paul E. Pfeffer Law Office, Clinton, for appellant.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Lawrence H. Schultz, County Atty., and Bruce A. Ingham, Asst. County Atty., for appellee.

Heard by HAYDEN, P.J., and CADY and HUITINK, JJ.

HUITINK, Judge.

Jason Allen Mortley appeals his conviction, following a jury trial, of second-degree sexual abuse. We reverse and remand for new trial.

The criminal investigation focused on Mortley, a nineteen-year-old who is mentally retarded, after Clinton Police Officer David Speakman interviewed the victim, Mortley's eleven-year-old cousin. She accused Mortley of sexually abusing her over a number of years. Speakman had also interviewed other alleged victims, all of whom identified Mortley as the perpetrator.

On August 2, 1993, Officer Speakman sought out Mortley and his brother at a relative's home. Speakman knew, prior to picking Mortley up, that he was mentally retarded. Speakman transported Mortley and his brother to the law enforcement center after they agreed to go with him. Upon arriving at the center, Mortley was separated from his brother and placed in a small, windowless room.

Speakman testified there are two forms of *Miranda* warnings, custodial and noncustodial, used by his department. The form a person receives depends on whether that person is in custody. Speakman administered the custodial *Miranda* rights to Mortley, taking twenty to thirty minutes to explain the rights to the point where he felt Mortley understood them. Mortley was shown an "Interview Rights Form" outlining both his *Miranda* rights and his Sixth–Amendment right to counsel. Speakman initialed the form in several places, indicating Mortley understood the rights, noting these rights were explained "with lots of help," indicating Mortley did not have a lawyer, he waived his right to court-appointed counsel, and that Mortley wished to speak with him. Mortley signed the form in two places, waiving his *Miranda* rights and his right to counsel.

Speakman proceeded to interview Mortley for over an hour. The interview was neither videotaped nor audiotaped and no one else was present during the interview. Speak-man drafted a written statement from notes taken during the interview in which Mortley admitted to numerous sex acts with children under twelve years of age. Speakman read the statement to Mortley prior to Mortley's signing the statement. Speakman then placed Mortley under arrest.

Mortley filed a motion to suppress the written and oral statements he made to police, alleging they were obtained without his knowing and intelligent waiver of his rights. After a hearing the district court denied the motion to suppress, determining Speakman exhaustively explained the *Miranda* warnings, that Mortley understood them, and that he made a considered and voluntary choice to waive them.

The portion of the written statement implicating Mortley in the sexual abuse of the eleven-year-old victim and her testimony were presented at Mortley's jury trial. Speakman also testified as to Mortley's statements regarding other acts of alleged sexual abuse. The jury found Mortley guilty as charged. The district court subsequently entered judgment and sentenced Mortley to up to twenty-five years in prison.

On appeal Mortley contends the district court erred in refusing to suppress his confession on the grounds that the State failed to prove the confession was made after a valid waiver of his *Miranda* rights. He further contends the State cannot establish the statement was voluntary.

The State contends *Miranda* warnings were not necessary because Mortley was not "in custody." Alternatively, the State contends Mortley voluntarily waived his rights and this waiver was knowingly and intelligently made.

■ Since a constitutional issue is involved, our review is de novo. We make an independent evaluation of the totality of the circumstances underlying the claimed constitutional infringements. *State v. Reid*, 394 N.W.2d 399, 402 (Iowa 1986).

■ We utilize a dual test in determining the admissibility of a defendant's inculpatory statements. *State v. Davis*, 446 N.W.2d 785, 788 (Iowa 1989). "First we ascertain wheth-

er [ ] *Miranda* warnings [were] required and if so, whether they were properly given. Second, we determine whether the statement is voluntary and satisfies due process." *Id.*

■ Concern over the need to give *Miranda* warnings—or the sufficiency of a defendant's waiver of them—arises only upon proof of both custody and interrogation. *State v. Kasel,* 488 N.W.2d 706, 708 (Iowa 1992) (citations omitted). It is undisputed that Mortley was interrogated within the meaning of *Miranda.* An interrogation under *Miranda* refers to any express questioning as well as those practices that police *should have known* were reasonably likely to elicit an incriminating response. *Rhode Island v. Innis,* 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297, 308 (1980) (emphasis in original). Therefore we are left to determine whether the interrogation in this case was custodial.

The Supreme Court has recently affirmed an officer's obligation to administer *Miranda* warnings "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury v. California,* —— U.S. ——, ——, 114 S.Ct. 1526, 1528–29, 128 L.Ed.2d 293, 298 (1994) (per curiam) (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977)). The Court went on to say:

> In determining whether an individual [is] in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there was a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam) (quoting *Mathiason,* supra, 429 U.S. at 495, 97 S.Ct. at 714).... *Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation,* not on the subjective views harbored by either the interrogating officers or the person being questioned.

*Id.* (emphasis added). This objective standard was cited with approval by our supreme court in *State v. Scott,* 518 N.W.2d 347 (Iowa 1994).

■ Under the objective standard, the existence of custody turns on the totality of the circumstances. *See U.S. v. Griffin,* 922 F.2d 1343, 1347 (8th Cir.1990). Factors to be considered include an accused's freedom to leave the scene and the purpose, place, and length of the interrogation. *Id.* at 1348. The indicia of custody most frequently cited in a totality of the circumstances analysis are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave ..., or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; [or] (5) whether the atmosphere was police dominated ...

*Id.* at 1349.

■ The facts of this case lead us to conclude Mortley was in custody for purposes of *Miranda.* The record reveals Speakman sought Mortley out at a relative's home and asked Mortley and his brother to accompany Speakman to the law enforcement center. Speakman himself transported them to the center.

Upon arriving at the law enforcement center, Mortley was separated from his brother and placed in a small room with Speakman. Although Speakman subjectively believed Mortley was free to leave, Mortley was never told he was *not* under arrest or free to leave. Speakman proceeded to administer custodial *Miranda* warnings to Mortley, taking twenty to thirty minutes to explain them. At the conclusion of the explanation, Mortley signed the form waiving his *Miranda* rights and his Sixth–Amendment right to counsel. The interview that followed lasted over an hour. Mortley remained in the room for approximately another hour and one-half while Speakman typed a statement from the interview notes.

After evaluating all of the objective circumstances of the interrogation, we find a reasonable person in Mortley's position would believe his freedom of movement was restricted to the extent he was "in custody." We, like the district court, find Mortley was "in custody" for purposes of our *Miranda* analysis.

Since *Miranda* was implicated, it is necessary for us to analyze whether Mortley provided a valid waiver of those rights. The State bears the burden of proving by a preponderance of the evidence that defendant's waiver was valid. The relinquishment of the right must be voluntary, in that it was not given as a result of intimidation, coercion, or deception. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 421 (1986). The waiver must also have been "made with a full awareness [ ] both of the nature of the right being abandoned *and* the consequences of the decision to abandon [those rights]." *Id.* This is determined by examining the totality of the circumstances surrounding the interrogation. *Id.* These circumstances may include "the background, experience, and conduct of the accused." *U.S. v. Barahona*, 990 F.2d 412, 418 (8th Cir.1993). The knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion is considered in making this determination. *Innis*, 446 U.S. at 301–02 n. 8, 100 S.Ct. at 1690 n. 8, 64 L.Ed.2d at 308 n. 8.

The State argues the fact Mortley has a low I.Q. is insufficient to suppress his statement because of the "very careful waiver of rights procedure in this case." The State, in its brief and at oral argument, steadfastly maintained the procedure "leaves no doubt of defendant's understanding" of his constitutional rights. We disagree.

The defense presented testimony of psychologists who had substantial familiarity with Jason's intellectual development over the years. Eric Gettes, Jason's school psychologist since middle school, testified Jason has a full-scale I.Q. of 66 and this places him in the bottom one percent of the population in intellectual ability.

Gettes also testified Jason reads and writes at a first grade level. His reading instruction "focuses on the presentation of survival words—stop sign, men's room, women's room, danger." When asked if Jason had the ability to read and understand the standard *Miranda* form, Gettes replied:

> I believe that he might be able to read some isolated words in this, but in taking it within its complete context, I believe he'd have a very difficult time looking at that and comprehending the meaning.

Gettes further testified Jason has the tendency to admit things about which he is uncertain, explaining,

> When he is asked if he understands something, he will almost automatically respond affirmatively—"Yes, I understand that." And a lot of times the case is that he doesn't understand that, and he's kind of embarrassed to admit a lack of knowledge. . . .

Gettes stated if Jason is questioned further it is usually shown he "legitimately does not understand" what was asked of him.

Dan Fullerton, another psychologist who worked with Jason on a number of occasions testified Jason is very inconsistent when responding to questions. Fullerton explained,

> My interpretation would be that it was not from the way I asked the questions, but it depended on his mood. It also depended—He very definitely answered questions differently when his mother was present than he did when we were alone.

Mortley's responses to Speakman's questions, as described by Speakman, fall within the pattern of expected responses explained by Gettes and Fullerton.

The evaluation of Mortley completed by the State reports he is "adequately competent" to stand trial. It also states that he is able to distinguish right from wrong. However, the report says nothing of Mortley's ability to appreciate the consequences of a waiver. *See Godinez v. Moran*, —— U.S. ——, ——, 113 S.Ct. 2680, 2686–87, 125 L.Ed.2d 321, 333–34 (1993) (finding of competency to stand trial is not enough when defendant seeks to waive right to counsel;

waiver must also be intelligent and voluntary before it can be accepted).

▮▮▮▮ A defendant's mental deficiency or disability alone does not render a confession involuntary. *State v. Rhomberg*, 516 N.W.2d 803, 807 (Iowa 1994) (citation omitted); *see also State v. Snethen*, 245 N.W.2d 308, 315 (Iowa 1976). And it is true that "a defendant's ignorance of the full consequences of his decisions [does not] vitiate[ ] their voluntariness." *Oregon v. Elstad*, 470 U.S. 298, 316, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222, 237 (1985). However, when it is clear the mental deficiency deprives the defendant of the *ability* to comprehend the meaning and effect of confessing, the confession is inadmissible. *See State v. Fetters*, 202 N.W.2d 84, 89–90 (Iowa 1972) (citation omitted).

▮▮▮ We also consider the following factors in determining the validity of the waiver as well as the voluntariness of the confession. First, Mortley has had little or no previous experience with the police. *See State v. Rhomberg*, 516 N.W.2d 803, 807 (Iowa 1994) (defendant had been taken into police custody five previous times); *State v. Conner*, 241 N.W.2d 447, 454 (Iowa 1976) (defendant had prior experience with police and had employed a lawyer). In addition, Mortley did not report on his own to the police station as did the defendant in *State v. Reid*, 394 N.W.2d 399, 403 (Iowa 1986). In this case, police sought him out at a relative's home and transported him to the law enforcement center.

Furthermore, testimony and reports show Mortley does not possess those skills necessary for him to ever live independently. *See Conner*, 241 N.W.2d at 453 (defendant held steady employment for seven years, supported wife and six children, and was licensed to drive); *Fetters*, 202 N.W.2d at 90 (defendant licensed to drive, employed, and supported wife and child); *State v. Holderness*, 191 N.W.2d 642, 646 (Iowa 1972) (defendant of sufficient intelligence to own a car, secure driver's license, drive from Iowa to Texas unaided, and live alone for some time). Although Speakman was aware of Mortley's mental retardation, he viewed him as an adult and testified he saw no need to consult

with Mortley's mother before continuing with his interrogation. Moreover, testimony revealed Mortley was susceptible to suggestion when not in the presence of a family member.

Speakman's testimony is all the evidence there is regarding the *Miranda* colloquy. The fact Speakman "exhaustively" repeated the *Miranda* warnings to Mortley does not establish Mortley understood the basic concept of waiver and the immediate and ultimate consequences of confessing. Given the fact courts are obligated to resolve "every reasonable presumption against a waiver" of fundamental rights, *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938), we cannot say, under these circumstances, the State has satisfied its heavy burden of showing a valid waiver.

Although our discussion of the voluntariness of Mortley's statement is subsumed in our waiver analysis, the same considerations which lead us to conclude Mortley's waiver was not valid support our conclusion that his confession was not voluntary. These considerations are the same for practical reasons as both are utilized under the totality of the circumstances analysis. *Davis*, 446 N.W.2d at 789.

▮▮▮▮ After our de novo review of the record, we conclude the trial court erred in refusing to suppress Mortley's written and oral statements to the police. However, the fact that Mortley's *Miranda* waiver was invalid and his confession involuntary does not end our inquiry. The dispositive issue in this appeal is whether this constitutional error was harmless. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967). "In order for a constitutional error to be harmless, the court must be able to declare it harmless beyond a reasonable doubt." *State v. Deases*, 518 N.W.2d 784, 791 (Iowa 1994). Where the State has otherwise overwhelming evidence of a defendant's guilt, the erroneous admission of a defendant's incriminating statement may be harmless beyond a reasonable doubt. *See, e.g., Milton v. Wainwright*, 407 U.S. 371, 372–73, 92 S.Ct. 2174, 2175–76, 33 L.Ed.2d 1, 4 (1972); *State v. Craney*, 347 N.W.2d 668,

674–76 (Iowa 1984), *cert. denied,* 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984).

In this case there is an absence of other overwhelming evidence of the defendant's guilt. Other than Officer Speakman's testimony regarding Mortley's confession, the only other evidence presented by the State was the victim's testimony. The confession therefore cannot be dismissed as merely cumulative. *See Craney,* 347 N.W.2d at 674–76. No medical evidence was presented, and no one else testified as to the alleged abuse. We therefore conclude the State has not established beyond a reasonable doubt that any error in the admission of the confession was harmless. Accordingly, Mortley's conviction is reversed, and the case is remanded for new trial.

**REVERSED AND REMANDED FOR NEW TRIAL.**