STATE of Iowa, Appellee,

v.

Christopher R. JENNETT, Appellant.

No. 96–0320.

Court of Appeals of Iowa.

Nov. 25, 1997.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman and Shellie L. Knipfer, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, William E. Davis, County Attorney, and Michael Walton, Assistant County Attorney, for appellee.

STREIT, Judge.

A defendant contends his confession was obtained by illicit police tactics. Christopher R. Jennett appeals from his conviction of two counts of second-degree sexual abuse in violation of Iowa Code section 709.3(2) (1995). He contends the trial court erred in not suppressing evidence of statements he made because: (1) they were obtained in violation of *Miranda* they were involuntary under the Fifth and Fourteenth Amendments. We affirm the trial court.

### I. Background & Facts.

Christopher R. Jennett's six and eight-year-old daughters related an account of his

touching and performing oral sex on them. At the time, in 1995, they were in his care for visitation.

Jennett went to the police station to answer questions. After forty-five minutes of questioning, Jennett confessed to police officer Michael Venema. The trial court heard the case without a jury and considered defendant's video-taped confession.

## II. Miranda Issues.

This is a constitutional challenge. We review de novo. *See State v. Howard,* 509 N.W.2d 764, 767 (Iowa 1993).

We first address defendant's claim the failure of the police detective to advise him according to the dictates of *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966), rendered his confession inadmissible. There must be an interrogation and custody to invoke *Miranda.* *Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07; *see State v. Brown,* 341 N.W.2d 10, 16 (Iowa 1983); *State v. Cook,* 330 N.W.2d 306, 312 (Iowa 1983); *State v. Kyseth,* 240 N.W.2d 671, 673 (Iowa 1976). Custodial interrogation is the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any way." *State v. Davis,* 446 N.W.2d 785, 788 (Iowa 1989).[1]

Police detective Venema did not read Jennett his *Miranda* rights before Jennett was questioned. Jennett argues he was entitled to the mandates of *Miranda.* Jennett was not taken into custody at any time during the interview. Jennett concedes he was not initially in custody, but contends because the incriminating statement was given after he said he had to go,[2] the interrogation turned from a noncustodial to custodial interrogation.

Jennett was not in custody when the statements were given. At the beginning of the interview, Jennett was told he was not under arrest and was free to leave at any time. Although Jennett said he had a job to finish, he made no attempts to leave. Venema testified if Jennett had tried to leave the interview, he would have allowed him to do so. Defendant was not denied food, drink, or bathroom privileges, although he asked for none. He was not physically restrained. The interview lasted approximately forty-five minutes. In keeping with the detective's statement he was not going to arrest him, Jennett left the police station at the close of the interview. The detective did not lie or misrepresent the custodial status of Jennett even if he thought it likely that he would eventually arrest Jennett.

Jennett relies on *Kasel* as support for his contention. In *Kasel,* the officer gave the *Miranda* warning with an assurance the suspect was free to leave, and the State argued because of the assurance the suspect could leave, no *Miranda* warnings were needed.

---

1.  A defendant is not entitled to *Miranda* rights merely because questioning takes place at the police station. *See California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983); *Jenner v. Smith,* 982 F.2d 329, 334–35 (8th Cir.), *cert. denied,* 510 U.S. 822, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993) (defendant not in custody when he voluntarily went to police headquarters and was free to leave). The focus of an investigation on a defendant without anything more does not require the safeguards of *Miranda.* *Beckwith v. United States,* 425 U.S. 341, 345–47, 96 S.Ct. 1612, 1615–16, 48 L.Ed.2d 1 (1976).

2.  This was the conversation between the officer and Jennett regarding Jennett leaving:
    Jennett: Can I come back?
    Officer: What do you mean, can you come back?
    Jennett: I've got a job I've got to go finish.
    Officer: Okay.
    Jennett: But I want to come back.

Officer: Okay. Uhm, we can probably take care of this in a couple of minutes. Like I told you I'm not going to arrest you or anything no matter what you're saying . . .
    Jennett: I understand that.
    Officer: Okay.
    Jennett: I got this job. I've got to get my job taken care of.
    Officer: I really feel that if you left now you probably wouldn't ever come back.
    Jennett: I will come back. I'm a man of my word. I will come back.
    Officer: Uhm, could you give me five minutes to get this ironed out.
    Jennett: I can't. I've got to get back to work. Are you going to be here this afternoon.
    Officer: Yes, I will be.
    Jennett: I will be back. . . .
    Officer: Could you give me five minutes.
    Jennett: Yes sir. I need a cigarette though.

*Kasel,* 488 N.W.2d at 708. When the suspect tried to leave, she was retrieved and told the rules had changed. The confession was suppressed.

Jennett told detective Venema he had to go finish a job. Venema asked him for five more minutes and said he wanted the interview finished before Jennett left. Jennett contends once he requested to end the interrogation and leave, the court's ruling in *Kasel* dictates his subsequent statements should have been suppressed. In *Kasel,* the suspect was stopped when she tried to leave. Here, the interviewer talked Jennett into staying until they were finished with the interview and he acquiesced.[3] *Kasel* does not support defendant's argument. Defendant was not in custody when he confessed. Defendant's confession was not obtained in violation of *Miranda.*[4]

### III. Voluntariness of Jennett's Confession.

**A. DNA Evidence and Search Warrant.** Jennett next contends his statements were involuntary because they were based upon improper promises of leniency and "psychological coercion" by Venema. The State has the burden of establishing by the preponderance of evidence the confession is voluntary. *State v. Oliver,* 341 N.W.2d 25, 28 (Iowa 1983); *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975); *State v. Payton,* 481 N.W.2d 325, 328 (Iowa 1992). In determining whether a confession is voluntary, we look at all the circumstances under which it was given. *See State v. Smith,* 546 N.W.2d 916, 926 (Iowa 1996). No one factor is determinative. *State v. Hodges,* 326 N.W.2d 345, 348 (Iowa 1982). The court in

*Davis* listed the following as factors in determining voluntariness of confessions:

... the defendant's age, experience, prior record, level of education and intelligence; the length of time the defendant is interrogated; whether physical punishment was used; defendant's ability to understand the questions; defendant's physical and emotional condition; whether any deceit or improper promises were used in gaining the admission; and any mental weaknesses the defendant may possess. *Id.* (citations omitted). In the event the questioning was custodial, defendant's knowledge and waiver of his Miranda rights and the length of his detention would also be considered.

*Davis,* 446 N.W.2d at 789.

Jennett was thirty-five years old at the time of the interview. He has a tenth-grade education and average intelligence. He was questioned for approximately forty-five minutes, no physical punishment was used, and he understood Venema's questions. Although he appeared uncomfortable at being questioned, he was not in an abnormal physical or emotional condition.

Jennett asserts Venema was not truthful when discussing DNA evidence and that he misrepresented he had a search warrant for Jennet's apartment, although he did not. There was no deceit by Venema. This is clear on review of the video tape:

Detective: Have you ever—I am sure you have probably seen some of this testing with the O.J. trial—its been all over the T.V. forever and they are doing a lot of blood samples and things like that. They can also do the same thing with semen and your blood type and your DNA can be drawn from semen and they determine

---

3. Jennett fundamentally argues that when he said he had to go, all interrogation should have stopped, similar to the situation when an attorney is requested by a suspect in custody. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 386 (1981); *State v. Lamp,* 322 N.W.2d 48, 55 (Iowa 1982); *State v. Nolan,* 390 N.W.2d 137, 141 (Iowa App. 1986). However, in this case, Jennett never ended the interview or tried to leave. He said he had to go to his job but then agreed to stay. (Detective: "Could you give me five minutes?" Jennett: "Yes, sir. I need a cigarette though.")

4. At the hearing on the motion to suppress, detective Venema testified that as a deliberate decision and an interrogation technique he did not place defendant in custody and did not advise him of his *Miranda* rights. Because Jennett was not in custody while being interrogated, he was not entitled to the dictates of *Miranda.* That does not mean, however, this court endorses the technique used by Venema in his interrogation.

your blood type and they can also run DNA out of that. Same *if* the girls *maybe* had like on their skin or on their clothing that they happened to be wearing that was tested after they got home from *say* this three week visitation. They use a fluoroscope, they can look, and the semen will show up as a bright color under the fluoroscope and if that were tested how do you explain it *if* some semen were found on the girls—(emphasis added)

Jennett: There is no way I could explain it. There's no way.

Detective: No way to explain it at all?

Jennett: None. None.

Detective: Even if your blood was tested and this all came back together at the end and it showed that this semen had your DNA. Is there anyway we could explain how that could have happened?

Jennett: No. No.

Although Detective Venema acknowledged the DNA statement was deceptive, he did not tell Jennett he had semen linked to Jennett by DNA samples. He asked a hypothetical question. This police tactic is not deceptive.

■ The legal process was not misrepresented to Jennett. This is clear on review of the context in which the search warrant was referred:

Jennett: Are you having a warrant made up?

Detective: I don't have a warrant for you, okay?

Jennett: A search warrant for my house?

Detective: What's that?

Jennett: A search warrant for my house?

Detective: I have a search warrant for your house, yeah.

Jennett: And is it being served?

Detective: No.

Jennett: Okay.

■ Jennet inquired whether Venema was having a warrant made up and Venema responded he had one made up for his apartment, but he was not serving it. This was true. It was not a misrepresentation of the legal process.[5] At the end of the interview the detective requested and he consented to a search of his apartment.

Even if these tactics were deceptive, the subtle deception-the mere filling out of a warrant application without obtaining the court order-was not the type to render a confession involuntary. Whether deception renders a waiver of constitutional rights involuntary was discussed in *State v. Cooper*, 217 N.W.2d 589 (Iowa 1974). There, the supreme court summarized the rule where there is evidence of deception as follows:

> Deception of any nature by representatives of the state cannot be condoned. However, we conclude deception standing alone does not render a waiver of constitutional rights involuntary as a matter of law unless the deceiving acts amount to a deprivation of due process. Nevertheless, deception becomes a factor to be considered in reviewing the totality of the circumstances in making the determination as to the voluntariness of the waiver even though the act does not per se produce exclusion.

*Id.* at 597. This standard should be applied to determine the effect any deception has in rendering a confession involuntary. Appellate courts have disapproved of deceptive police practices, but have been reluctant to find confessions involuntary after examining the totality of the circumstances. *State v. Oliver*, 341 N.W.2d 25, 29 (Iowa 1983).[6]

---

**5.** The detective's statement: "I have a search warrant for your house, yeah." may be subtly deceptive even though in the context of the conversation the detective was merely stating that he had one "made up." The deception may come from the suspect's ignorance of the legal process—thinking the only requirement for a search warrant is the filing out of the warrant. A waiver of rights may be deemed involuntary when it is the result of the misrepresentation of the right waived. Even if this conversation were interpreted as deceptive, Jennett did not confess or

waive his right to remain silent because of Venema's statement he had made up a search warrant.

**6.** In *Oliver*, the defendant claimed the operator of the polygraph examination misled her by claiming the test conclusively showed she lied about having knowledge of details of the murder when in fact the test was inconclusive on the question she was asked. 341 N.W.2d at 27. The results of the polygraph weighed heavily in her decision to confess. *Id.* at 29. The court held

The alleged deceptions about DNA and the search warrant did not render Jennett's confessions involuntary. For example, in *State v. Boren,* the interviewer asked the suspect how he would respond if he were told his daughter had been given a polygraph test and it showed everything she said was the truth. *State v. Boren,* 224 N.W.2d 14, 15 (Iowa), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975). The daughter had not been given a polygraph test. *See id.* The defendant acknowledged what his daughter said was true and gave a detailed statement. *Id.* The court held the alleged "trick question" did not constitute coercion. *Id.* at 16. Rather, it was a means of challenging defendant's veracity rather than a device calculated to overbear his will or impair his capacity for self-determination. *Id.* The deception, if any, did not coerce Jennett, work against his will, or impair his capacity for self-determination. Under the totality of circumstances, Jennett's confession was voluntary.

**▇▇▇ B. *Alleged Promise of Leniency.*** Jennett argues he was promised leniency for his confession. Detective Venema explained he had seen two types of sex offenders—those who don't care at all about the persons they molest and those who care about the people they molest and show their affection in the wrong way. The detective said he thought Jennett was the latter. He also told Jennett they could "try to work this thing out," "take care of this," and "get this ironed out." There was no implication to Jennett that "good" sexual abusers would get easier treatment. There was no implication of better treatment by the law of "good" sexual abusers. At the very least, the detective allowed the suspect to think that the interviewer would not think badly of him or judge him if he admitted sexual contact with his daughters. There is no law that prohibits the police from establishing rapport with a suspect. A statement to a criminal suspect that implies empathy or understanding for the sus-

pect does not amount to improper inducement or coercion.

Venema never promised Jennett directly or impliedly a lesser sentence if he confessed. This case is not like *Hodges,* where the officer told the suspect if he gave his "side of the story, there was a much better chance of him receiving a lesser offense than first-degree murder." *State v. Hodges,* 326 N.W.2d 345, 349 (Iowa 1982).

▇▇▇ "An officer can ordinarily tell a suspect that it is better to tell the truth. The line between admissibility and exclusion seems to be crossed, however, if the officer also tells the suspect what advantage is to be gained or is likely from making a confession." *Id.*

Venema's statements did not go beyond urging Jennett to tell the truth. He did not state or imply a lesser charge would be more likely if he gave his side of the story. Jennett's confession was not induced by the hope of leniency. If anything, Venema's discussion of good and bad sex offenders and Jennett's love for his daughters extracted a confession because of Jennett's guilt, not because he hoped to have a lesser sentence.

Because Jennett was not deceived or induced by promises of leniency, Jennett's confession was voluntary and admissible.

**AFFIRMED.**

All judges concur, except SACKETT and HUITINK, JJ., who partially dissent.

SACKETT, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part.

Defendant was charged after his daughters, six and eight years old, said defendant put a dirty video tape in the VCR, ordered them to undress, touched them improperly, and performed oral sex in the summer of 1995. At the time, they were in his care during visitation, his marriage to their mother having been dissolved.

the nature of the deception and defendant's circumstances did not demand suppression of the confession. In part, the court reasoned Oliver was an intelligent person above average intelligent and had not shown any physical or mental impairment which bore on her ability to make an informed decision about her confession. *Id.* at 31.

The girls had given statements before defendant was asked to come to the police department to answer questions. After agreeing on a date and time, defendant was interviewed by Officer Venema. The interview was recorded on video tape. The video tape was admitted into evidence. The trial court heard the case without a jury and in reaching its verdict of guilt said it had considered defendant's confession to Venema and found the statements made by defendant at that time corroborated the children's testimony.

Defendant claims the failure of Venema to advise him according to the dictates of *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966), render the confession he gave inadmissible. The State admits Venema did not issue the warning of constitutional rights to remain silent and to have an attorney in the manner prescribed in *Miranda*.

At the hearing on the motion to suppress, Venema testified that as an interrogation technique he did not place defendant in custody and did not advise him of his *Miranda* rights. Venema further testified that regardless of what was said during the interview, defendant would be arrested on the basis of the children's statements. I do not approve of this technique where an arrest is planned. I construe the majority's opinion does not approve of it either.[1]

The video tape shows Venema had defendant in the corner of an interrogation room at the police station and sat on a chair directly in front of him. Venema left the room twice, both times shutting the door behind him and opening it on his return. Defendant, of limited education and unsophisticated in matters of the law, appears to be constrained by Venema to remain during the course of Venema's questions. When defendant asked to leave, Venema lied saying he was not going to arrest defendant though at trial Venema testified he intended to at all times.

The majority found Venema not truthful on several issues that came up during the interview. He told defendant the police had DNA evidence.[2] They did not. Venema also told defendant he had a search warrant for defendant's apartment, although he did not.

A *Miranda* inquiry is not triggered unless there is both custody and interrogation. *Miranda*, 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07; *see State v. Brown*, 341 N.W.2d 10, 16 (Iowa 1983); *State v. Cook*, 330 N.W.2d 306, 312 (Iowa 1983); *State v. Kyseth*, 240 N.W.2d 671, 673 (Iowa 1976). Custodial interrogation is the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any way." *State v. Davis*, 446 N.W.2d 785, 788 (Iowa 1989).

I concur with the majority a *Miranda* inquiry was not triggered because defendant was not in custody as defined by applicable case law. I am disturbed, however, that the officer, who admittedly had decided to arrest defendant, circumvented giving the *Miranda* warning by questionable interview tactics. I consider this factor, among others, in dissenting from the majority decision on the next issue; that is, defendant's contention his statements were involuntary because they were based upon improper promises of leniency and "psychological coercion" by Venema's untruths about the search warrant and the DNA testing and statements Venema made that indicated there were different kinds of sexual abuse.

I consider the following in finding the confession involuntary: Defendant was not warned he had a right to remain silent and a right to an attorney. *See State v. Hodges*, 326 N.W.2d 345, 348 (Iowa 1982). The *Miranda* warning was not given because Venema decided not to advise defendant of his rights as an interrogation technique. *See id.* The confession came pursuant to an interrogation. *See State v. Snethen*, 245 N.W.2d 308, 313 (Iowa 1976). The interviewer inten-

---

1. The majority in a footnote says, "That does not mean, however, this court endorses the technique used by Venema in his interrogation."

2. Though the majority does not find Venema told defendant the police had DNA evidence, my viewing of the video tape convinced me he did. Even if he did not, the only finding that can be made is that the statements are deceptive.

tionally lied to defendant telling him the State had a search warrant for his apartment though it did not.[3] *See id.; but see State v. Boren,* 224 N.W.2d 14, 16 (Iowa 1974), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975). The interviewer told defendant he was not going to arrest him despite his intention to do so. There was subtle deception in the interviewer's discussion of DNA technology. *See Snethen,* 245 N.W.2d at 313. The interviewer gave the implication there are good and bad sex offenders and because defendant loved his daughters he came under the category of a good sex offender, and if he confessed to being the good type of sexual abuser they could work it out or take care of it. Direct or implied promises of leniency can render a confession involuntary. *See State v. Hrbek,* 336 N.W.2d 431, 436 (Iowa 1983); *State v. Kase,* 344 N.W.2d 223, 225 (Iowa 1984); *see also State v. Hilpipre,* 242 N.W.2d 306, 312 (Iowa 1976).

Our courts expect honesty and fair dealing. Honesty and fair dealing are the cornerstones of our system of justice. A police officer who skirts the rules and plays with the truth reflects poorly on the many dedicated officers who operate within the letter of the law and are truthful. For society to respect officers, society must be assured they can believe officers at all times. I believe as judges we must demand honesty and not be willing to look for excuses for less than honesty.

For a statement to be considered free and voluntary, it must not be obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. *Davis,* 446 N.W.2d at 787. The State has the burden of establishing by the preponderance of evidence the confession is voluntary. *State v. Oliver,* 341 N.W.2d 25, 28 (Iowa 1983); *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975).

I believe the State has failed to meet this burden and the confession should have been suppressed. The trial court relied on the confession in convicting defendant. I would reverse the trial court and remand for a new trial.

HUITINK, J., joins in this partial dissent.

---

3. The majority, while setting forth Venema's statement, "I have a search warrant for your house, yeah," finds this not untruthful. Based on defendant's ignorance of the legal process, I find it a deliberate untruth.