**STATE of Iowa, Appellee,**

v.

**Pete ALSPACH, Appellant.**

No. 93–1125.

Supreme Court of Iowa.

Nov. 23, 1994.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., Lee E. Poppen, County Atty., and Jeffrey R. TeKippe, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, ANDREASEN, and TERNUS, JJ.

### PER CURIAM.

At issue in the present case is whether the district court erred in failing to suppress allegedly involuntary statements made by the defendant during custodial interrogation by the police because he made those statements on the belief that he would achieve religious redemption. We do not believe the district court erred in admitting the statements and we affirm.

On January 3, 1993, Pete Alspach and his nephew Charles Alspach randomly selected C.B. as the victim of their planned sexual assault. Charles hid in the back of C.B.'s van in a grocery store parking lot. When she returned from the store he forced her at gunpoint to drive into the country. Pete followed in another vehicle. C.B. was ordered to pull over and was then forced into the car Pete was driving. Pete and Charles both forced C.B. to submit to sexual abuse.

C.B. was then allowed to leave the vehicle and told to lie in a country ditch. After the vehicle left, she found her way to a farmhouse and law enforcement was summoned.

Pete returned to his brother John Alspach's house, where he had been living. John agreed to take him to a drug rehabilitation center the following day. Upon returning from the rehabilitation center the next day, Pete told John he had raped a woman the previous night. John told Pete he had to turn himself over to police. Pete was initially resistant to the idea, however, he agreed to go to the authorities after speaking with Charles and Charles' father, George Alspach.

At about 10:30 p.m. on January 4, 1993, Pete and Charles arrived at the sheriff's office in the company of John and George. They stated they were involved in the rape that had occurred the previous night. Both Pete and Charles waived their *Miranda* rights and gave oral and written statements confessing their roles in the assault.

A physical examination of C.B. yielded semen samples consistent with both Pete and Charles. A hair was also taken from C.B.'s mouth that was consistent with Pete's hair.

Pete was charged with first-degree kidnapping. He filed notices of intoxication and diminished responsibility. Pete filed a motion to suppress his confession to law enforcement. At the suppression hearing Dr. Dan Rogers testified that Pete did not voluntarily confess to the rape, but rather he confessed based on the "delusion" that it would result in religious redemption, forgiveness and acceptance by his brothers. Dr. Rogers testified that Pete also believed that the confession would make the victim forgive and love him. He also testified that Pete was not mentally incompetent. The district court found no "hint of coercive activity by law enforcement officers" and denied the motion to suppress.

Pete then filed a motion in limine seeking to exclude his confession because it was a result of "privileged" communications with his brothers whom he viewed as religious authorities. He argued the privilege was necessary to protect his freedom of religion.

The district court overruled the motion. Pete was convicted as charged following a bench trial and sentenced to life in prison. He now appeals.

■ Pete argues the district court erred in failing to suppress involuntary statements he made during the custodial interrogation by the police. He claims these statements were used against him in violation of his rights to due process. He further maintains that due to his traumatic childhood, he sought religious salvation by confessing his sins in order to gain acceptance by his older family members. Pete also claims that this delusional state made him unaware of the consequences of his confession.

■ Because Pete has alleged a violation of his constitutional rights, we must examine the totality of the circumstances to determine whether the statements were the product of a free and unconstrained choice. *State v. Davis,* 446 N.W.2d 785, 789 (Iowa 1989).

■ In order to establish the voluntariness of Pete's statements, the State has the burden of showing by a preponderance of the evidence that his decision to confess was "essentially free and unconstrained with his will not overborne and his capacity for self-determination not critically impaired." *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975). A statement will be considered free and voluntary if it is free from any sort of threat or is not obtained by any direct or implied promise. *Davis,* 446 N.W.2d at 785 (citing *State v. Chambers,* 39 Iowa 179, 182 (1874)). If an accused's statements have been obtained by methods offensive to due process in which the suspect clearly had no opportunity to exercise a free and unconstrained will, the statements are inadmissible. *Id.* Iowa courts have also recognized the difference between voluntary waivers of rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and voluntary statements, *Davis,* 446 N.W.2d at 788. A contention that a defendant's statements were taken in violation of his *Miranda* rights and a contention that the statements were not voluntary are separate issues. *State v. Snethen,* 245 N.W.2d 308, 311 (Iowa 1976).

■ We have also delineated numerous factors to consider when determining whether a statement is voluntary, including the defendant's age, prior record, intelligence, length of the interrogation, the defendant's ability to understand the questions, and any mental weaknesses the defendant may possess. *State v. Reid,* 394 N.W.2d 399, 402 (Iowa 1986); *State v. Hodges,* 326 N.W.2d 345, 348 (Iowa 1982).

In the present case, Pete asserts that he confessed to the police because he was under the delusion that a confession would result in religious redemption, forgiveness and acceptance by his brothers. Pete argues the police exploited his mental illness in order to obtain this confession. The United States Supreme Court, however, specifically rejected the religious redemption defense in *Colorado v. Connelly,* 479 U.S. 157, 163, 107 S.Ct. 515, 519, 93 L.Ed.2d 473 (1986).

In rejecting Connolly's involuntariness claim, the Supreme Court recognized that while interrogators have found more subtle methods of extracting information, thus rendering a defendant's mental status a significant factor, this did not justify a conclusion that a defendant's mental condition, by itself, should ever dispose of an inquiry into the voluntariness of the statements. *Id.* at 165, 107 S.Ct. at 520–21, 93 L.Ed.2d at 482–83. According to the majority,

> [t]he flaw in [defendant's] constitutional argument is that it would expand our previous line of "voluntariness" cases into a far-ranging requirement that courts must divine a defendant's motivation for speaking or acting as he did even though there be no claim that governmental conduct coerced his decision.

*Id.* at 165–66, 107 S.Ct. at 521, 93 L.Ed.2d at 482–83. The Court went on to hold that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.*

Turning to the facts of the present case, the record reveals that Pete confessed not at the urging of the police, but at the request of his brothers. When Pete arrived at the police station, he was calm and cooperative.

There is not a hint of evidence in the record to suggest any coercive conduct on the part of the police. Pete was aware of the gravity of his actions as shown by his asking his brother to drive him to Missouri. We believe the district court was correct in holding that Pete's confession was voluntary.

 We likewise find no merit in Pete's argument that the district court erred in failing to preclude allegedly privileged conversations with his brother in violation of Iowa Code section 622.10 (1993). We review the district court's ruling for an abuse of discretion. *State v. Burkett,* 357 N.W.2d 632, 637 (Iowa 1984). Section 622.10 provides, in pertinent part, that a member of the clergy shall not be allowed to testify and disclose:

> [A]ny confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

The statute further provides that the privilege does not apply if the person holding the privilege waives those rights. The statute is to be construed liberally to carry out its manifest purpose. *State v. Tornquist,* 254 Iowa 1135, 1154, 120 N.W.2d 483, 494 (1963).

 In order to determine whether a communication to a member of the clergy falls within the purview of section 622.10, the communication must be: (1) confidential, (2) entrusted to a person in his or her professional capacity, and (3) necessary and proper for the discharge of the function of the person's office. *State v. Deases,* 518 N.W.2d 784, 787 (Iowa 1994). Pete has failed to satisfy all three elements.

At trial, Pete's brother, John, testified that Pete did not confess to him in confidence. John stated Pete's confession was in no way a religious confession to him. John testified he repeatedly told Pete he had to turn himself over to police. The first element is therefore not satisfied. Pete also fails to meet the second element since there was no evidence that any of his brothers were members of the clergy, nor was there evidence that his brothers were in some professional capacity when listening to the confession. Finally, Pete failed to show that his confession was necessary and proper for the discharge of his brother's office.

Pete's conviction and sentence are therefore affirmed.

**AFFIRMED.**