# IN THE COURT OF APPEALS OF IOWA

No. 14-0065
Filed January 14, 2015

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**JACKIE JERMAINE LANE,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Johnson County, Paul D. Miller

(motion to suppress) and Douglas S. Russell (trial), Judges.

       Defendant appeals his conviction for robbery in the first degree.

**AFFIRMED.**

       Mark C. Smith, State Appellate Defender, and Rachel C. Regenold,

Assistant Appellate Defender, for appellant.

       Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney

General, Janet M. Lyness, County Attorney, and Anne M. Lahey and Elizabeth

Beglin, Assistant County Attorneys, for appellee.

       Considered by Vogel, P.J., Potterfield, J., and Mahan, S.J.*

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, S.J.**

The defendant appeals his conviction for robbery in the first degree. We determine the defendant was adequately informed of his *Miranda* rights. We conclude the district court properly concluded defendant voluntarily waived his *Miranda* rights and made inculpatory statements to officers. The defendant's challenge to the amount of attorney fees is not ripe for consideration because no amount has yet been set.

## I.  Background Facts & Proceedings.

On February 22, 2012, Kellee Bobek was working at Creekside Market, a convenience store, in Iowa City. At about 11:00 p.m. a man came into the store asking for a cigar and a pack of cigarettes. While she was getting them, another man ran into the store, jumped over the counter, and put Bobek in a choke hold. Bobek did not see a knife, but could feel it held at her throat. The man who was holding her told Bobek she "had five seconds to put the money in the bag or he was going to slit [her] throat wide open." After she put money in the bag the men left together. Bobek suffered a busted lip, her nose was swollen and bleeding, and she had a mark on her neck from where the knife was held.

Officers responded to the scene and observed footprints on top of the counter and in mud outside the store. The officers obtained surveillance video of the incident. An officer who observed the video noticed the man who had jumped over the counter was wearing a distinctive plaid hooded sweatshirt, similar to one he had seen Jackie Lane wearing on February 16, 2012.

On March 6, 2012, at about 2:00 a.m., Lane went to Mercy Hospital in Iowa City stating he needed help or he was going to kill himself or someone else.

When Officer Alex Stricker arrived at the hospital, Lane had been sedated and was lying down. Officer Stricker saw that the tread of Lane's shoes matched the footprints found at Creekside Market. Also, Lane's pants were similar to those worn by the man who had jumped over the counter. When the lead officers in the investigation, Jeremy Bossard and Tom Hartshorn, arrived at Mercy Hospital, they were unable to question Lane because he kept falling asleep. Lane's shoes and pants were seized by officers.

Later on March 6, 2012, Lane was transferred to St. Luke's Hospital in Cedar Rapids, where he was treated by Dr. Jesus Garcia Mayorga. When Lane "came to" from being sedated, he was grossly psychotic. At the time of Lane's initial assessment at St. Luke's, "[t]here was no linearity to his thought processes or speech." Lane was given haloperidol to treat his psychosis. Dr. Garcia Mayorga diagnosed Lane with schizophrenia—paranoid type and antisocial personality disorder.

Officer Hartshorn contacted St. Luke's on the afternoon of March 6, 2012, and asked social workers to inform him when Lane was willing to talk to officers and a doctor had cleared him to talk to them. After being so informed, Officers Bossard and Hartshorn met Lane at St. Luke's at about 2:00 p.m. on March 7, 2012, in an interview that lasted about one hour. They told Lane he was not able to leave the facility because he was hospitalized, but could leave the room. Lane was informed of his *Miranda* rights and he signed a document stating he understood his rights. A transcript from the interview shows Lane clearly and coherently answered the officers' questions. During the interview Lane stated he

had robbed the Creekside Market, named his accomplices, and gave several details about the offense.

Lane was charged with robbery in the first degree, in violation of Iowa Code section 711.2 (2011). He filed a motion to suppress, claiming he had not voluntarily waived his *Miranda* rights. After a hearing the district court denied the motion. The court found he had been informed of his rights and he "clearly waived his right to remain silent and to have assistance of counsel." The court also found Lane's statements were voluntary, stating the transcript showed "Lane fully participated in the interview, was able to understand the questions, and respond appropriately and coherently."

The case proceeded to a trial before a jury. The jury found Lane guilty of first-degree robbery. He was sentenced to a term of imprisonment not to exceed twenty-five years. Lane now appeals.

## II. Motion to Suppress

**A.** Lane contends he was subject to custodial interrogation because he was not able to leave St. Luke's when he was questioned by officers. There is a violation of the Fifth Amendment if there is custodial interrogation of a person who has not been effectively apprised of his rights. *Miranda v. Arizona*, 384 U.S. 436, 498 (1966). However, "[t]he requirements of *Miranda* are not triggered 'unless there is both custody and interrogation.'" *State v. Turner*, 630 N.W.2d 601, 607 (Iowa 2001) (citation omitted). Even if we were to find Lane was in custody at the time he was questioned by officers, which we do not, Lane was adequately apprised of his rights. The transcript shows the officers advised Lane of his rights and that he signed a document stating he understood his rights. On

our de novo review, *State v. Pearson*, 804 N.W.2d 260, 265 (Iowa 2011), we do not find there was a Fifth Amendment violation under these facts.

**B.** Lane also asserts he did not make a voluntary, knowing, and intelligent waiver of his *Miranda* rights. He points out that he was eighteen years old, had no adult convictions, had been medicated, and was at a psychiatric hospital. He states that he exhibited delusional and disorganized thinking during his initial assessment with Dr. Garcia Mayorga, the day before his interview with officers.

Our supreme court has stated:

> Suspects may waive their *Miranda* rights as long as the suspect has done so knowingly, intelligently, and voluntarily. For a waiver to be made knowingly and intelligently, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." For a waiver to be made voluntarily, the relinquishment of the right must have been voluntary, meaning it was the product of the suspect's free and deliberate choice rather than intimidation, coercion, or deception.
>
> The question of whether a suspect in fact knowingly, intelligently, and voluntarily waived his or her *Miranda* rights is to be made by inquiring into the totality of the circumstances surrounding the interrogation, and to ascertain whether the suspect in fact "decided to forgo his rights to remain silent and to have the assistance of counsel."

*State v. Ortiz*, 766 N.W.2d 244, 251 (Iowa 2009) (citations omitted). The State has the burden to show by a preponderance of the evidence Lane knowingly waived his constitutional rights and voluntarily made inculpatory statements. *State v. Morgan*, 559 N.W.2d 603, 606 (Iowa 1997).

In considering whether a defendant's will was overborne or his capacity for self-determination was critically impaired, we consider "the defendant's age, prior record, intelligence, length of the interrogation, the defendant's ability to understand the questions, and any mental weaknesses the defendant may

possess." *State v. Alspach*, 524 N.W.2d 665, 667 (Iowa 1994); *see also State v. Smith*, 546 N.W.2d 916, 926 (Iowa 1996).

Here, Lane was eighteen years old and had an eleventh grade education. While he had no prior adult convictions, he had a lengthy history as a juvenile. The district court found, "Lane was, at least, of average intelligence." The officers went to St. Luke's to question Lane only after hospital staff informed them Lane was willing and able to talk to them. The interrogation lasted only one hour. The transcript showed Lane understood the officers' questions and answered them clearly and coherently. While Lane suffered from mental illness, his statements in the transcript show he was able to make a knowing and intelligent waiver of his rights. The interview took place about thirty-six hours after Lane first presented himself at Mercy Hospital and he had been receiving treatment for his mental health issues during this time. We conclude the district court properly concluded Lane voluntarily waived his *Miranda* rights and made inculpatory statements to the officers.

### III. Reimbursement of Attorney Fees.

Lane claims the district court erred by requiring him to pay attorney fees in an amount approved by the State Public Defender. He asserts that under section 13B.4(4)(a), the amount he should be required to pay should be limited to $3600. The State points out that the State Public Defender has not yet approved an amount for attorney fees in this case. For this reason, Lane's challenge to the amount of attorney fees is not yet ripe for consideration.

We affirm Lane's conviction for first-degree robbery.

**AFFIRMED.**