# IN THE COURT OF APPEALS OF IOWA

No. 19-0730
Filed November 30, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JAVON JOSHUA JENNINGS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Richard H. Davidson, Judge.

Javon Jennings appeals his conviction for child endangerment causing death. **AFFIRMED.**

Katherine Kaminsky Murphy of Kate Murphy Law, P.L.C., Glenwood (until withdrawal), and Krisanne C. Weimer of Weimer Law, P.C., Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., May, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VOGEL, Senior Judge.**

Following a jury trial, Javon Jennings was convicted of child endangerment causing death in violation of Iowa Code section 726.6(1)(b) and (4) (2018).[1] Jennings appeals, asserting prosecutorial misconduct, ineffective assistance of counsel,[2] and insufficiency of the evidence supporting the verdict.

The jury could have found the following facts admitted into the record. J.H. was born in December 2016. On April 18, 2018, J.H.'s mother—who was also Jennings's live-in paramour—left for work a few minutes before 4:00 p.m. Jennings supervised J.H. alone while the mother was at work, though a friend and his young son visited with Jennings and J.H. at the residence until about 4:30 p.m. that day. When the mother came home around 11:20 p.m., Jennings told her J.H. was sick. The mother checked on J.H. and found the child tense and groaning, but the mother managed to sooth the child to sleep before she went to bed herself. Around 4:30 the next morning, Jennings awoke and found J.H. cold and stiff. Jennings called 911, and emergency medical personnel and law enforcement responded to the home. Resuscitation efforts on the child were futile. An autopsy

---

[1] Jennings was also found guilty of involuntary manslaughter by commission of a public offense, in violation of Iowa Code section 726.6(1)(b), (3), and (4) (2018), which merged into the greater offense prior to sentencing.

[2] Under legislation effective July 1, 2019, we lack authority to consider ineffective-assistance-of-counsel claims on direct appeal. *See State v. Macke*, 933 N.W.2d 226, 231 (Iowa 2019) (citing Iowa Code § 814.7 (2019)). This legislation also prohibits us from considering pro se filings when a defendant has counsel. *See* 2019 Iowa Acts ch. 141, § 30 (codified at 814.6A(1)). However, this legislation does not apply retroactively. *See Macke*, 933 N.W.2d at 235 ("We conclude the absence of retroactivity language in sections 814.6 and 814.7 means those provisions apply only prospectively and do not apply to cases pending on July 1, 2019."). Because Jennings's judgment and sentence were entered prior to July 1, 2019, we may consider his ineffective-assistance claims, including those contained in his pro se brief, on direct appeal. *See id.*

performed later that day noted multiple blunt-force injuries to J.H.'s head, neck, torso, and extremities, resulting in a fractured femur and hemorrhages to several internal organs. The autopsy report listed the cause of death as "multiple blunt force injuries" and the manner of death as "homicide."

Jennings was arrested and charged with the child's death. The matter came on for trial beginning February 5, 2019. The jury found him guilty of involuntary manslaughter involving a public offense and child endangerment causing death. Following the district court's denial of his motion in arrest of judgment and motion for new trial, the court merged the two counts into a single count of child endangerment causing death and sentenced Jennings to an indeterminate period of incarceration not to exceed fifty years.

## I. Standard of Review

"We review ineffective-assistance-of-counsel claims de novo." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). "If an ineffective-assistance-of-counsel claim is raised on direct appeal from the criminal proceedings, we may decide the record is adequate to decide the claim or may choose to preserve the claim for postconviction proceedings." *Id.* To prevail on his ineffective-assistance claim, Jennings must show: "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.*

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "We will consider all the evidence presented, not just the inculpatory evidence." *Id.* "Evidence is considered substantial if, when viewed in the light most favorable to the State, it

can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.*

## II. Prosecutorial Misconduct

Jennings raises several instances of what he claims to be prosecutorial misconduct resulting in denial of a fair trial. However, the State correctly asserts his claims are not preserved as Jennings did not object to them during the trial. *See State v. Coleman*, 907 N.W.2d 124, 138 (Iowa 2018) (stating claims of prosecutorial misconduct not raised in the trial court would be reviewed only in the context of ineffective assistance of counsel); *State v. Radeke*, 444 N.W.2d 476, 479 (Iowa 1989) ("[A]lleged misconduct by opposing counsel must be asserted before the issues are submitted to the jury."). Therefore, Jennings has not preserved his claims of prosecutorial misconduct for our review.[3]

## III. Ineffective Assistance of Counsel.

Jennings argues his attorney was ineffective for failing to advise him of his right to confidential clergy-penitent conversations, neglecting to even recognize two jail-house phone calls were consultations with someone he now claims is a religious leader. The two calls included brief discussions about various Muslim practices, dress, hair style, and observances during Ramadan. Jennings claims counsel should have objected to the admission of recordings of the two phone calls and asserted the calls were privileged communications. *See* Iowa Code § 622.10

---

[3] Jennings did not ask us to consider his claims of prosecutorial conduct under an ineffective-assistance-of-counsel framework, but even if he had, we would find the record insufficient to address the claims and preserve them for postconviction proceedings. *See State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) ("Even a lawyer is entitled to his [or her] day in court . . . .").

(privileging confidential communications with clergy and certain other professionals). To secure this privilege, Jennings must show such communications were: "(1) confidential, (2) entrusted to a person in his or her professional capacity, and (3) necessary and proper for the discharge of the function of the person's office." *State v Alspach*, 524 N.W.2d 665, 668 (Iowa 1994). However, the State at trial only referred to this other person as Jennings's "friend," and nothing in the record identifies this other person or would alert counsel that the person was Jennings's religious advisor. Such an identification is necessary to trigger the privilege for communications with a clergy member, as opposed to a conversation between mere acquaintances discussing aspects of the Muslim faith. *See id.* Moreover, during the pretrial hearing, defense counsel was concerned any reference to Islam or Allah may create bias in the jury and feared the jury's "passions may be inflamed." Such words were then deleted from the recording. Jennings's counsel was therefore working to protect Jennings to ensure a fair trial. With no suggestion the person on the other end of the conversation was Jennings's religious advisor, his counsel had no duty to object to the admission of the recordings based on an unasserted privilege.

Furthermore, even if Jennings could show his counsel breached an essential duty and the redacted recordings should not have been admitted, Jennings can show no resulting prejudice from these conversations that only vaguely related to the death of the child. In opening statements, the State accurately described the recordings to be admitted:

> You're also going to hear on June fourth he made a call to a friend where he stated acts are judged by intentions. Went on to say

6

anything that would happen, if it was unintentional, they would judge me on that. I didn't intentionally do nothing, you know what I mean.

Based on the overwhelming evidence of Jennings's guilt, as discussed below, we find no prejudice resulted from admitting these recordings, and we reject his ineffective-assistance-of-counsel claim based on the supposed privilege of these conversations.

**IV. Sufficiency of the Evidence**

Jennings asserts the verdict was not supported by sufficient evidence.[4] The State claims he failed to preserve error because he never challenged the sufficiency in a motion for judgment of acquittal, instead waiting until a motion for new trial to assert his claim. *See* Iowa R. Crim. P. 2.24(2)(b)(6) (allowing the district court to grant new trial "[w]hen the verdict is contrary to law or evidence"). We note Jennings made a motion for judgment of acquittal at the close of the State's evidence. Limited to this opinion, we choose to address his sufficiency argument.

Jennings's main complaint is that there was not a specific time frame proven during which the fatal injuries were inflicted. Thus, he asserts he was wrongly the focus of the police investigation. However, the record contains ample evidence

---

[4] The jury instructions set forth the elements for child endangerment causing death:
1. On or about the 18th day of April, the defendant was the person having custody or control over [J.H.].
2. [J.H.] was under the age of fourteen years.
3. The defendant intentionally committed an act, committed a series of acts, or used unreasonable force, torture or cruelty that:
a. resulted in bodily injury to [J.H.], OR
b. was intended to cause serious injury to [J.H.].
4. The defendant's act or acts resulted in the death of [J.H.].

J.H. was happy and healthy until Jennings took sole responsibility for the child's care prior to death.

The mother testified she often noticed scrapes and bruises on J.H. after the child was in Jennings's care, but the mother reasoned the child was simply "adventurous and wild, climbing all the time, jumping off of things, just a wild child, full of fun." Jennings claimed recent bruising on J.H.'s face resulted from the child climbing a chair and falling into a heater. J.H. had a virus that caused vomiting within a week of death, but it seemed to have passed by April 18, 2019, and was of no serious concern to the mother at that time. On the morning of April 18, the mother recorded a few short videos of J.H.—which were admitted into evidence—depicting a healthy child "getting up and dancing around and jumping." Other witnesses testified J.H. seemed healthy and normal that day, including Jennings's friend who saw J.H. as late as 4:30 p.m. and testified "[e]verything was fine" when they parted. The mother left J.H. in Jennings's sole care from the time she left for work until around 11:20 p.m., when she returned home to find J.H. "groaning" and "tense." Jennings attributed J.H.'s condition to illness. He found J.H. dead hours later. The State medical examiner, Dr. Dennis F. Klein, determined in the autopsy report that the child died of "multiple blunt force injuries" consisting of "blunt force injuries of head and neck, blunt force injuries of torso, blunt force injuries of extremities and cerebral edema," and the manner of death was "homicide." A pediatrician concluded in a report J.H.'s "injuries are the result of physical abuse." With no other explanation of the multiple injuries and Jennings being the sole caretaker in the hours before J.H.'s death, the record contains sufficient evidence to uphold the verdict.

**V. Pro Se Issues**

Jennings also filed a pro se brief, raising issues of ineffective assistance of counsel and prosecutorial misconduct. However most of his claims are general assertions without a specific reference to the record for us to review or are repetitive of his counsel's claims already addressed. His only separate, properly presented claim asserts his counsel was ineffective for failing to object when the State made reference in closing argument to J.H.'s older sibling, T.H., being present at an earlier occasion when J.H. supposedly fell down stairs and sustained bruises to the head. The State said:

> Why did [the mother] trust the defendant to keep watching her child after the two prior incidents? She said I believed him every time when he had said he let [J.H.] fall down the stairs. By the way, that was at his statement [to police] when he talked about the fall down the stairs issue. He was over talking to—I think the statement was I was talking to my homey . . . . *[T.H.] was there.*

(Emphasis added.) Jennings asserts this statement—"[T.H.] was there"—violated a motion in limine barring reference to T.H. However, the motion in limine only prohibited "[a]ny statements of [T.H.] offered through recording or testimony." Because the State only mentioned T.H. without offering any of the child's statements, the State did not violate the motion in limine. Furthermore, the State was only quoting Jennings from a police interview, which had already been admitted into record without objection when the State played a recording in open court. Therefore, Jennings's counsel was not ineffective for failing to object to this brief reference to T.H.

**VI. Conclusion**

Jennings's claims of prosecutorial misconduct are not preserved for our review, we reject his claims of ineffective assistance of counsel, and we find sufficient evidence to support the verdict. Therefore, we affirm Jennings's conviction.

**AFFIRMED.**